No. 46,066

STATE OF KANSAS, *Appellee*, v. LINDELL WAYNE COLLINS, *Appellant*.

(498 P. 2d 103)

Opinion filed June 10, 1972.

*J. R. Russell*, of Kansas City, argued the cause and was on the brief for the appellant.

*Nick A. Tomasic*, chief deputy county attorney, argued the cause, and *Vern Miller*, attorney general, and *Frank D. Menghini*, county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: Appellant was charged by information with attempted first degree robbery and assault with intent to kill. A jury convicted him of the attempted robbery charged in the first count, and under the second convicted him of the lesser included offense of endangering the life of another in violation of former K. S. A. 21-435. On appeal he alleges the trial court erred in refusing to permit his alibi witnesses to testify and in giving certain instructions.

The victims of the crimes involved were Mr. and Mrs. John Jacobs, who together operated a small appliance repair shop in the Argentine district of Kansas City. At about 3:30 p. m. on Monday, December 30, 1968, Mrs. Jacobs was tending the store while her husband was in the basement shop area working. A stranger came in who responded to Mrs. Jacobs' greeting by opening his coat and motioning toward a gun in his belt. He then motioned toward the cash register and told her not to be nervous. Taking him at his word Mrs. Jacobs promptly fled around a partition and out the back door, calling to her husband as she went, "John, a holdup."

That worthy, hearing the call, seized a pair of heavy pliers and came up the basement stairs, only to hear the front door chime and find an empty shop. He went out the back after his wife, and at her direction around the store to an alley. There he observed a man hurrying away from him; upon being accosted the stranger broke into a run, pulled a gun and fired over his shoulder. Mr. Jacobs gave chase and was met with yet another hasty shot. Undaunted, he continued the chase, heaving the pliers just as the door of the getaway car was opened, breaking the window of the open door. Faced with a now-leveled gun, he dove behind a car parked next to the fugitive's, looked for something else to throw, and toyed with the idea of disabling the car by an attack on its rear-mounted engine. While he was thus engaged the engine started and the gunman drove off.

Later that week Mr. and Mrs. Jacobs each independently identified the appellant as the person involved in the foregoing episode, selecting his picture from a large selection of similar pictures. They made positive in-court identifications, as did an officer who later that day had engaged in a high speed chase with a car matching the description of the get-away car down to the broken window.

We pause to note that as the prosecuting attorney was eliciting these identifications, and during his opening statement, he repeatedly referred to the appellant as "the criminal defendant." The identical remarks, made by the same prosecutor, were urged as error in *State v. Phippen*, 208 Kan. 962, 494 P. 2d 1137. Although they are not so urged here, we reiterate and emphasize what we said there—that this court cannot condone "the use of epithets which in any way might be construed in derogation of the presumption of innocence which attaches to one on trial for crime." (208 Kan., at 964.)

At trial, after the state had rested and it was time for the defense, appellant's counsel indicated he intended to use alibi witnesses; this was the first notice to either the court or the state of such an intention. No attempt had been made to comply with former K. S. A. 62-1341, requiring notice to the county attorney at least seven days before trial, nor had the court's discretionary power under the statute been invoked to permit the notice to be served "at any time before the jury is sworn to try the action." The reason offered for noncompliance was that the names of the potential witnesses were first made known to appellant's counsel only after

the trial had commenced. He had relied on appellant's sister to produce witnesses, and there had been a breakdown of communications when she moved.

Under similar circumstances we have gone so far as to say that even the defendant could properly be precluded from testifying that he was elsewhere at the time of the alleged crime. *State v. Rider,* 194 Kan. 398, 399 P. 2d 564, Syl. ¶ 2; *State v. Kelly,* 203 Kan. 360, 454 P. 2d 501, Syl. ¶ 3. See also, *State v. Sharp,* 202 Kan. 644, 451 P. 2d 137, and cases cited. Here the court ruled that the defendant would be permitted to testify "as to what he pleases," but that his other witnesses could not testify "in the nature of alibi." This was all he would have been entitled to under the present code (K. S. A. 1971 Supp. 22-3218) and more than he was entitled to under the code then in effect and the authorities cited above. The ruling certainly was not reversible error.

The error claimed in the instructions was the inclusion of various definitions, those particularly objected to being of murder and manslaughter. The second count of the information, assault with intent to kill, was based on the shots fired at Mr. Jacobs. Appellant's objection was that he was not charged with murder or manslaughter, and that a definition of those crimes might confuse the jury to his prejudice. The trial court overruled the objection, feeling that the definitions were necessary to complement the instruction on the lesser included offense of endangering the life of Mr. Jacobs— an instruction to which the appellant did *not* object and which was clearly called for under the evidence. See *State v. Trotter,* 203 Kan. 31, 453 P. 2d 93, and cases cited at page 38.

In so ruling and instructing we think the trial court was eminently correct. The statute defining the lesser offense, former K. S. A. 21-435, required that the endangerment of life must have occurred "under circumstances which would constitute murder or manslaughter if death had ensued." To have instructed on that section *without* telling the jury what "circumstances would constitute murder or manslaughter" would have left them wholly at sea. We specifically approved giving such definitions in conjunction with an instruction under 21-435 in *State v. Hanks,* 179 Kan. 145, 148, 292 P. 2d 1096.

The judgment is affirmed.

APPROVED BY THE COURT.