No. 48,247

THE STATE OF KANSAS, *Appellee,* v. JAMES M. KIRBY, *Appellant.*

(563 P.2d 408)

Opinion filed March 25, 1977.

*Gerald E. Wells,* of Arabia and Wells, of Wichita, argued the cause, and *Paul Arabia,* of the same firm, was with him on the brief for the appellant.

*Stephen M. Joseph,* assistant district attorney, argued the cause, and *Curt T.*

*Schneider,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendant-appellant, James M. Kirby, was charged with and convicted of criminal injury to persons as defined by K.S.A. 1976 Supp. 21-3431. The essential facts of the case are not really in dispute and are as follows: On February 4, 1975, Gaylord and Patsy Taylor and their two children resided at 1354 North Yale in Wichita. That evening, when they went to bed, they could hear extremely loud music coming from one of the houses across the street. Some time later Mr. Taylor was awakened by the sound of breaking glass. He then heard gun shots. He and his wife crawled into their son's bedroom and sent the boy to a basement bedroom. Taylor called the police who informed him that a similar report had already been received. Taylor later discovered what was identified as a spent bullet on the living room floor. When the police officers arrived at the Taylor home they found a shattered mirror tile in the living room and a series of holes in a window screen, storm window, window shade, and curtain in the living room. Later that evening it was discovered that another bullet had entered the closet of the Taylor boy's bedroom, passing through several toys and lodging in a group of record albums in the closet. From the damage to the house the police were able to ascertain that the bullets had come from the house across the street at 1333 North Yale.

The police officers proceeded to that house and observed lights on inside and loud music. At first they could get no response from the occupants. Then one of the officers knocked on the front door with a flashlight. He looked through a window and observed two men walking towards the door. One of the men was the defendant Kirby who had a rifle in one hand and a drink in the other. The other man was Donald Bukacek. He opened the door and the officers walked into the house. A .30-caliber M-1 rifle was lying at the defendant's feet. An inquiry was made as to who owned the house and at this point Dr. Ernest Bubieniec entered the room and stated he was the owner. In the following conversation the defendant when asked stated that the rifle was his. The defendant was given a *Miranda* warning and placed under arrest. The

defendant stated that he had been shooting the rifle, but did not know how many rounds he had fired. Dr. Bubieniec also admitted shooting the gun. Further conversation revealed the shooting had taken place in the kitchen. Later in the kitchen a detective counted 60 bullet holes in the wall and ceiling. A .30-caliber shell casing was found on the kitchen table. The police investigator observed the words "Big Don" written over the holes in the wall. Apparently "Big Don" was Donald Bukacek. Although there was some dispute at the trial as to whether or not the two bullets found at the Taylor home had been fired by the defendant Kirby, there was sufficient evidence to establish that as a fact. The testimony showed that the defendant Kirby had no prior acquaintance with the Taylors and that he did not intentionally fire any bullets towards the Taylor home. There was no evidence that the defendant intended to injure anyone by the firing of the weapon. The bullets were all directed toward the ceiling of the Bubieniec house and at least two had ricocheted into the Taylor home across the street.

At the trial there was a great deal of argument as to the interpretation to be given K. S. A. 1976 Supp. 21-3431. At the close of the state's evidence and again prior to the submission of the case to the jury, the defendant moved for his acquittal and for a dismissal of the case on the grounds that K. S. A. 1976 Supp. 21-3431 is unconstitutional because it is vague and fails to inform a reasonable person of the nature of the proscribed conduct as required by Section 10 of the Bill of Rights of the Kansas Constitution and by the Fifth and Fourteenth Amendments to the Constitution of the United States. These motions were overruled by the trial court and the case was submitted to the jury. Following his conviction the defendant appealed to this court raising again the question of the constitutionality of 21-3431 and numerous trial errors pertaining to the admission of evidence and the instructions of the court.

In determining the constitutional issue raised on the appeal we should first consider some of the basic principles which have been applied in cases where various Kansas statutes have been attacked as being unconstitutionally vague and indefinite. These principles were recently discussed in *State v. Conley*, 216 Kan. 66, 531 P. 2d 36, and in *State v. Gunzelman*, 210 Kan. 481, 502 P. 2d 705. In *Conley* we stated that the test whether a statute is so

vague and indefinite and therefore fails to inform the accused of the nature and cause of the charge against him as required by Section 10 of the Kansas Bill of Rights is the same as that applicable in determining whether a statute violates the due process clause of the Fourteenth Amendment to the federal constitution. The test to determine whether a criminal statute is unconstitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. If a statute conveys this warning it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess, at its meaning and differ as to its application is violative of due process. At its heart the test for vagueness is a commonsense determination of fundamental fairness. (*Kansas City Millwright Co., Inc. v. Kalb*, 221 Kan. 658, 562 P.2d 65.) This court has always held that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of a statute's validity, and that before it can be stricken it must clearly appear that the statute violates the constitution. If there is any reasonable way to construe a statute to be constitutionally valid, the court should do so. (*Brown v. Wichita State University*, 219 Kan. 2, 547 P.2d 1015.)

With these basic principles in mind we now turn to a close examination of K.S.A. 1976 Supp. 21-3431 to determine its constitutionality. 21-3431 defines the offense of criminal injury to persons in the following language:

"21-3431. **Criminal injury to persons.** Criminal injury to persons is the maiming, wounding, disfiguring, causing great bodily harm, or endangering of life of a person under circumstances which would constitute murder or manslaughter if death had ensued.

"Criminal injury to persons is a class E felony.

"This section shall be supplemental to and a part of the Kansas criminal code."

The predecessor to 21-3431 was K.S.A. 21-435 (Corrick) which provided as follows:

"21-435. **Maiming, wounding, disfiguring or causing great bodily harm; penalty.**

"If any person shall be maimed, wounded or disfigured, or receive great bodily harm, or his life be endangered by the act, procurement or culpable negligence of another, in cases and under circumstances which would constitute murder or

manslaughter if death had ensued, the person by whose act, procurement or negligence such injury or danger of life shall be occasioned shall, in cases not otherwise provided for, be punished by confinement and hard labor not exceeding five years, or in a county jail not less than six months."

At the time the old criminal code was completely revised by the Judicial Council in 1968, 21-435 was eliminated as a crime under the new code. The old statutes pertaining to crimes against persons, including homicides, assaults, and batteries, were completely redrafted and included in the new criminal code which contained general provisions applicable to all crimes included thereunder. The old code, which had been the law of this state for 100 years, combined assaults and batteries together in the same statutes without any attempt to differentiate between the two offenses. The new criminal code as drafted by the Judicial Council and adopted as the law of this state effective July 1, 1970, separates assaults and batteries into two distinct classes of crime and provides for specific statutes governing each of these crimes. In K. S. A. 21-3408 assault is defined as an intentional threat or attempt to do bodily harm to another coupled with apparent ability and resulting in immediate apprehension of bodily harm. No bodily contact is necessary. In 21-3410 aggravated assault is defined so as to require an unlawful assaulting, or striking at another with a deadly weapon or committing assault by threatening or menacing another while disguised in any manner designed to conceal identity, or where a willful and intentional assault occurs with intent to commit any felony.

The primary statutory sections defining the battery crimes are 21-3412 and 21-3414. In 21-3412 battery is defined as the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner. Under 21-3414 aggravated battery is the unlawful touching or application of force to the person of another with intent to injure that person or another and which inflicts great bodily harm, or causes any disfigurement or dismemberment to or of his person, or is done with a deadly weapon, or in any manner whereby great bodily harm, disfigurement, dismemberment, or death can be inflicted. It is important to note that the battery crimes under the new criminal code require an intentional touching or application of force to the person of another. Aggravated battery requires a specific intent to injure the person of another. There are other

statutes in the criminal code defining various types of assaults and batteries under particular circumstances. In the criminal code as originally adopted and made effective July 1, 1970, there was no statutory provision which made it a crime for one person to seriously injure another without a specific intent to injure, even though the act was done in a wanton or reckless manner. The legislature attempted to fill this gap in the criminal code by enacting K. S. A. 21-3431 at its session in 1972. The language of 21-3431 is quite similar to that of 21-435.

We have concluded that the statute in question fails to meet the basic test and that it must be held unconstitutional because it forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess as to its meaning and differ as to its application. In reaching this conclusion we have considered not only the specific statute, 21-3431, but also the criminal code in its entirety, since it was designed and enacted as a comprehensive code with interrelated sections. In the first place the statutory provisions are uncertain as to whether the act of maiming, wounding, disfiguring, causing great bodily harm, or endangering of life must have been done intentionally or unintentionally. K. S. A. 21-3201 provides in section (1) that, with certain exceptions not involved in this case, a criminal intent is an essential element of *every* crime defined by the code. Criminal intention may be established by proof that the conduct of the accused person was willful or wanton. The statute then uses the following language: "Proof of willful conduct shall be required to establish criminal intent, unless the statute defining the crime expressly provides that the prohibited act is criminal if done in a wanton manner." In section (2), willful conduct is defined as "conduct that is purposeful and intentional and not accidental." In section (3), wanton conduct is defined as "conduct done under circumstances that show a realization of the imminence of danger to the person of another and a reckless disregard or complete indifference and unconcern for the probable consequences of such conduct." The prohibited acts under 21-3431 are the maiming, wounding, disfiguring, causing great bodily harm, or endangering of life of another person. 21-3201 requires proof that these prohibited acts must have been done willfully unless 21-3431, the statute defining the crime of criminal injury to persons, expressly provides that the prohibited act is criminal if done in a

wanton manner. A person of common intelligence reading 21-3201 and 21-3431 together could not reasonably be expected to find in 21-3431 an express provision that the prohibited acts are criminal if done in a wanton manner. We believe that this vagueness in language would create an uncertainty in the mind of a person of reasonable intelligence. If the legislature intends to make criminal an act which is committed wantonly but not intentionally, it should do so in clear and express statutory language. This the legislature has not done with respect to the statute now under consideration. In this regard we deem it also important to note that K. S. A. 21-435 (Corrick) specifically provided for criminal liability where the maiming, wounding, etc. were caused by the *culpable negligence* of another. This reference to culpable negligence was not included in the language of 21-3431.

Another observation should be made as to the requirement of an intentional act in order for 21-3431 to apply. The statute makes it a criminal act to wound or endanger the life of another under circumstances which would "constitute murder or manslaughter if death had ensued." In *State v. Wright,* 221 Kan. 132, 557 P. 2d 1267, this court stated that the distinction between aggravated battery (K. S. A. 21-3414) and criminal injury to persons (21-3431) is that an intent to injure is required for conviction of aggravated battery but is not essential for conviction of criminal injury to persons. This conclusion would be entirely correct under circumstances where the defendant would have been guilty of involuntary manslaughter if the death of the victim had ensued. Involuntary manslaughter (21-3404) requires an unlawful killing without malice and done unintentionally in the commission of an unlawful act not amounting to felony, or in the commission of a lawful act in an unlawful or wanton manner. The situation is entirely different, however, where under the factual circumstances the defendant would have been guilty of murder or voluntary manslaughter if the death of the victim had ensued. Murder in the first degree (21-3401), murder in the second degree (21-3402), and voluntary manslaughter (21-3403) all require an *intentional* killing. It would thus appear that a defendant may be guilty of criminal injury to persons under 21-3431 and on the same set of facts be guilty of aggravated battery under 21-3414 where the defendant inflicts great bodily harm upon his victim

with the intent to kill the victim but fails to achieve that result. Under the vague statutory language the crime of criminal injury to persons would seem to be applicable to both intentional and unintentional injuries which cause great bodily harm or endanger life. In the case of intentional injury the same factual circumstances would reasonably require a jury to find a defendant guilty of aggravated battery (21-3414), a class C felony, and also guilty under 21-3431, a class E felony. Where the bodily injury is intentionally caused and the jury is instructed as to both crimes, a defendant could be convicted of either crime at the jury's uncontrolled caprice. Such a result smacks of injustice and unequal treatment under the law. This again illustrates the vagueness and uncertainty in the language of 21-3431.

The defendant in his brief raises another claim of vagueness in the statute. He contends that if a strict construction is applied to 21-3431 some actual bodily injury to the victim is an essential element of the crime. The statute defines the crime as criminal *injury* to persons. He maintains that the phrase "criminal injury to persons" implies the existence of some actual injury to the person, and, furthermore, that the reference in the statute to the circumstance "if death had ensued" implies the existence of some type of personal injury to the victim from which death might result. Such a conclusion, however, is contradicted by the language of 21-3431 which lists a series of prohibited acts in the alternative with each act separated by the word "or." This language would indicate that endangering the life of a person does not require an actual wounding or bodily injury of any kind. Consequently a person's life could be endangered under the statute without an actual wounding of the person. We have upheld convictions under 21-435 where the victim's body was not touched or injured. (*State v. Lanam*, 140 Kan. 434, 36 P. 2d 966; *State v. Collins*, 209 Kan. 534, 498 P. 2d 103.)

As pointed out above K. S. A. 21-435 (Corrick), the predecessor to 21-3431, was a part of the Kansas criminal code for over 100 years until its repeal effective July 1, 1970. The crime is contained in Chapter 33, Section 36, of the General Laws of 1862. The marginal note to the section describes the crime in the following language: "Persons by whose acts *great harm* is done, how punished." This same crime is again provided for in Chapter 31, Section 42, of the General Statutes of 1868. In chapter 31 the

crime is described both in the index and in the marginal note to section 42 as "Person by whose act, &c., *great bodily harm* is done, how punished." These early descriptions of the crime, which would seem to require some actual bodily harm to the victim, are followed and repeated again and again in various statutory revisions through the years. We also note that the title to House Bill 1886, which created 21-3431 and which was enacted as Chapter 114 of the Laws of 1972, designates the crime as "criminal injury to persons." Suffice it to say, the statutory language and the legislative history of 21-435 might well raise a reasonable question in the mind of a person of common intelligence as to whether a defendant could be guilty of criminal injury to persons under K.S.A. 21-3431 unless the victim suffered some type of bodily injury.

If we assume that under the statute the proscribed act of endangering the life of another person does not require some actual bodily injury to the victim, we encounter another question of vagueness and uncertainty. In our judgment the phrase "endangering of life" is vague and ambiguous. 21-3431 does not define "endangering of life," nor is the term defined in the definition section, 21-3110, or anywhere else in the criminal code. The defendant correctly points out that there is no universally accepted definition of the term "endangering of life" which exists within the common knowledge of the population of this state. He also maintains that the legal community has not provided any definite and certain standards with which to define such danger. The state in its brief concedes that the statutory phrase "endangering of life" is susceptible of two constructions and, hence, is ambiguous. Counsel for the state points out that on the one hand, the language could be construed to proscribe any act which possibly could imperil human life, no matter how remote that possibility might be. On the other hand, it could be construed to proscribe only those acts which are immediately and inherently life threatening. The difficulty with this argument is that, assuming the state is correct in its position, it would from a practical standpoint be impossible for a person of common intelligence in every factual situation to draw a clear line between acts which are and which are not immediately and inherently life threatening. Webster's Third New International Dictionary 748 (Unabridged 1967) defines the term "endangering" as meaning

"to bring into danger or peril of probable harm or loss." Other sources do not assist in clarifying the meaning of the term. In our judgment the term "endangering of life" as used in 21-3431 requires too much speculation on the part of potential defendants and jurors.

Our conclusion is that K.S.A. 1976 Supp. 21-3431 is not sufficiently definite in its description of the acts or conduct forbidden when measured by common understanding and practice as to satisfy the constitutional requirements of due process of law. We wish to emphasize that this decision does not preclude the legislature from drafting an appropriate statute in clear and definite language making it a criminal offense to inflict great bodily harm upon another by wanton misconduct. Our only holding in this case is that 21-3431 is unconstitutional and void because the language of that statute as drafted is impermissibly vague. It is our judgment that the trial court erred in failing to sustain the defendant's motions for acquittal and to dismiss the action. In view of the result reached it is not necessary for us to consider the various trial errors raised in other points on this appeal.

The judgment of the district court is reversed and it is ordered that the defendant be discharged from further prosecution in this action.