The Honorable Todd Tiahrt State Senator, 26th District 1329 Amity Goddard, Kansas 67052
Dear Senator Tiahrt:
As senator for the 26th district you have asked our opinion regarding accessible parking. Your questions are set forth with specificity in the following discussion.
"Is the proper person to charge as a defendant for a violation of K.S.A. 8-1,129(a) the registered owner of the offending vehicle? In most instances, such violation is observed while the operator of an offending vehicle is away from the vehicle. The resulting citation is either left with the empty vehicle or mailed to the registered owner. The actual operator of the vehicle is never observed and cannot later be identified in court. The registered owner of the offending vehicle is required to answer for the violation committed through the use of such owner's vehicle."
The statute you reference in your question provides:
 "(a) Except when necessary to avoid conflict with other traffic, or in compliance with the law or the directions of a law enforcement officer or official traffic-control device, no person shall:
 "(1) Stop, stand or park a vehicle in any parking space designated as accessible parking without having a special license plate, permanent placard or disabled veteran license plate and an individual identification card, or a valid temporary placard; or
 "(2) stop, stand or park a vehicle so that it blocks an access ramp adjacent to a designated accessible parking space.
 "(b) Violation of subsection (a) is an unclassified misdemeanor punishable by a fine of not more than $50.
 "(c) The provisions of subsection (a) shall be enforced by law enforcement officers on public and private property." K.S.A. 8-1,129.
K.S.A. 8-2112 directs a law enforcement officer who finds a vehicle parked or stopped in violation of this provision or any ordinance to issue a traffic citation. Kansas statute is very clear that in regard to such traffic violations, there is a presumption of ownership.
 "In any prosecution charging a violation of any law or regulation governing the stopping, standing or parking of a vehicle, proof that the particular vehicle described in the complaint was in violation of any such law or regulation, together with proof that the defendant named in the complaint was at the time of the violation the registered owner of such vehicle, shall constitute in evidence a prima facia presumption that the registered owner of such vehicle was the person who parked or placed such vehicle at the point where, and for the time during which, such violation occurred." K.S.A. 8-2114.
The general rule is that "under or apart from statute, the registered owner of a motor vehicle may be liable for a violation of a parking regulation, even though he did not park or permit parking of the motor vehicle, although he may relieve himself of responsibility by disclosing who actually parked the vehicle. . . . The registered owner of the vehicle has the burden of going forward with evidence to show that he was not in possession or control of the vehicle or that he was not the person who committed the violation." 61A C.J.S. Motor Vehicles sec. 714(1) (1989).
Based on this authority, we believe it is proper for the registered owner of a vehicle to receive the traffic citation for a parking violation. Therefore, it is unnecessary to address your second question regarding drafting legislation to make registered owners liable for traffic violations involving their vehicles.
"Is the term `access aisle' as used in K.S.A. 8-1,129(a)(3) vague and indefinite thus making said statute unconstitutional? As I read the statute, K.S.A. 8-1,128 and K.S.A. 1-1,128a define `accessible parking spaces' by stating that such spaces shall be marked in a particular manner. Those statutes also make reference to certain federal regulations, 28 C.F.R. Part 36, wherein at Section 4.1.2(5)(a) it is stated that, `Except as provided in (b), access aisles adjacent to accessible spaces shall be 60 inches (1525 mm) wide'. I can find no other type of definition for the term `access aisle'. The information does not state any required length of an access aisle or any particular manner in which an access aisle should be marked. Does this mean an access aisle can be enforced if it is an irregular shape, such as a triangle, as long as it has at least a 60 inch width? Can the access aisle also be marked by solid painting or even polka dots as opposed to stipes and still be enforced as such under Kansas law?"
The guaranty of due process, whether under the fifth or fourteenth amendment, is to be liberally construed to effectuate its purpose of protecting a citizen against arbitrary invasions of life, liberty and property. Betts v. Easley, 161 Kan. 459 (1946). However, the constitutionality of a statute is presumed. State v. Dunn, 233 Kan. 411,418 (1983). Therefore, it must clearly appear that the statute violates the constitution before a statute is declared invalid.
The standards for determining whether a statute is unconstitutionally vague depends on the manner in which it is used. The criminal standard requires that:
 ". . . its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process." Hearn v. City of Overland Park, 244 Kan. 638, 642 (1989). See also, State v. Garrett, 235 Kan. 768 (1984); State ex rel. Murray v. Palmgren, 231 Kan. 524, 532 (1982); State v. Kirby, 222 Kan. 1, 4 (1977).
The court in City of Wichita v. Wallace, 246 Kan. 253, 259 (1990), held that the following test is to be used when determining whether a criminal statute is unconstitutionally vague:
 "`The test to determine whether a criminal statute is unconstitutionally void by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. If a statute conveys this warning it is not void for vagueness. Conversely, a statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. At its heart the test for vagueness is a commonsense determination of fundamental fairness.' State v. Kirby, 222 Kan. 1, 4, 563 P.2d 408 (1977). . . .
 "Finally, this court has recognized that, in determining whether an ordinance is void for vagueness, the following two inquiries are appropriate: `(1) whether the ordinance gives fair warning to those persons potentially subject to it, and (2) whether the ordinance adequately guards against arbitrary and discriminatory enforcement." Dunn, 233 Kan. at 418 (citing Cardarella v. City of Overland Park, 228 Kan. 698, 702, 620 P.2d 1122
[1980])."
The purpose behind this statute is obviously to provide a service for persons with a disability. Although the statute does not expressly establish the required length of the access aisle, "common intelligence" would have us conclude that it must be as long as the parking space to satisfy its intended purpose. Cities and counties regulate the length of parking spaces within their own zoning requirements.
You also suggest that since the shape or the required markings are not specifically set out that such deficiency would render the statute unconstitutional due to vagueness. Again, using the "common intelligence" approach, it can be determined that the access aisle should be designed so that it is 60 inches wide at all points pursuant to the requirement of K.S.A. 1993 Supp. 8-1,128 and 8-1,128a. Furthermore, the type of marking is not critical to the intended purpose of the statute; as long as the space is marked and reserved for individuals with disabilities it would be sufficient. It should, however, be noted that sec. 4.6.3* of the Americans with disabilities act accessibility guidelines shows the use of hash marks to designate the access aisle, and therefore, most individuals believe that this is the preferred way to mark such spaces.
Therefore, because as "a general rule, the constitutionality of a statute is presumed," State v. Dunn, 233 Kan. 411, 418 (1983), and because the statute passes the "common intelligence" test, putting the statute in the context of its intended purpose, we do not deem this statute to be so vague as to render it unconstitutional.
We are aware that the eighteenth judicial district court in Sedgwick county rendered a decision on June 3, 1994, in City of Wichita v.Basgall, Case No. 94 MC 25, and City of Wichita v. Green, Case No. 94 MC 28, which dealt with the constitutionality of the access aisle provision. However, those cases dealt with a city ordinance which was different than the federal and state laws. We therefore do not believe it is determinative of the issue you raise.
"Is there any provision in Kansas law that would indicate that K.S.A. 8-1,129 is not enforceable every hour of every day? Is a violation of this statute just as enforceable after 5:00 o'clock P.M. as it is before 5:00 o'clock P.M.?"
K.S.A. 8-2001 prohibits any local authority from enacting or enforcing any ordinance in conflict with the uniform act regulating traffic on highways but specifically allows adoption of regulations not in conflict with the act:
 "The provisions of this act shall be applicable and uniform throughout this state and in all cities and other political subdivisions therein, and no local authority shall enact or enforce any ordinance in conflict with the provisions of this act unless expressly authorized; however, local authorities may adopt additional traffic regulations which are not in conflict with the provisions of this act."
Further, K.S.A. 8-2002(1) authorizes local authorities to enact regulations regarding parking issues:
 "(a) The provisions of this act shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from:
 "(1) Regulating or prohibiting stopping, standing or parking. . . ."
Because there is not a statute in the uniform act regulating traffic on highways regarding the specific times that the parking law is enforced, a local entity may enact such an ordinance or resolution. Normally ordinances or resolutions regulating parking are enforceable 24 hours a day, 7 days a week, unless otherwise posted.
"[Can] local jurisdictions enact city ordinances which are more restrictive than K.S.A. 8-1,129? Would a local ordinance prohibiting the same conduct prohibited by this statute but imposing a fine in excess of $100.11 be valid? I have specific reference to City of Wichita Ordinance Section 11.52.020(25), a copy of which is enclosed with this letter. Does the definition of `access area' in the Wichita ordinance define a violation that is different from that defined by K.S.A. 8-1,129(a)(3), or is `access area' in the ordinance identical to `access aisle' in the statute?"
A city, through its home rule powers, can enact ordinances which address issues and crimes not addressed by the statutes and therefore city ordinances may be more restrictive than state laws. The court inBlevins v. Hiebert, 247 Kan. 1, 5 (1990) held that "home rule legislation is prohibited in a field of law in which there is a state statute uniformly applicable to all cities or counties. . . ." However, home rule is applicable in the "area of regulation and prohibition, where local government exercises its police power for the health, safety and general welfare of the public." The Blevins court went on to state that "a municipality has the right to legislate by ordinary ordinance or resolution non-conflicting local police power laws even though there are state laws on the subject uniformly applicable to all municipalities. . . . The legislature may prohibit such local authority by expressly preempting the field." Blevins, 247 Kan. at 8.
Local ordinances governing the same conduct as K.S.A. 1993 Supp. 8-1,129
are within the municipality's police power and, because state law does not expressly preempt the field, such ordinances will withstand a challenge in this regard if not in conflict with state law. We do not interpret local ordinances and resolutions except to make determinations of constitutionality, therefore we do not here opine on the effect of the Wichita ordinance. This is a matter which should be resolved through the assistance of local counsel.
In conclusion, it is our opinion that it is proper for the registered owner of a vehicle to receive a traffic citation for a parking violation. The term access aisle as used in K.S.A. 1993 Supp. 8-1,129 is not unconstitutionally vague. Since there is not a statute in the uniform act regulating traffic on highways regarding the specific times that the parking law is enforced, a local entity may enact an ordinance or resolution specifically setting forth the time that the parking ordinance or resolution will be in effect. A city cannot use their home rules powers to preempt themselves from a state statute which is uniformly applicable to all cities.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Mary Jane Stattelman Assistant Attorney General
RTS:JLM:MJS:bas