NOT DESIGNATED FOR PUBLICATION

No. 120,126

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JACOB ZACHARY YOUNG,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed November 15, 2019. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., BUSER, J., and LAHEY, S.J.

PER CURIAM: Jacob Zachary Young appeals the district court's ruling denying his motion to suppress evidence seized during an inventory search of a motor vehicle. Young raises three arguments on appeal. First, he contends K.S.A. 8-1548 and the related Kansas City, Kansas municipal ordinance relied on to initiate the traffic stop are unconstitutional. Second, Young claims the district court erred by finding that the officer's decision to impound the vehicle was reasonable. Third, Young argues the district court erred by ruling that the officer's opening of closed containers, which contained illegal drugs and

1

paraphernalia, found inside the vehicle was constitutional. Upon our review we find no error. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 2017, Kansas City, Kansas Police Officer Andrew Chronister observed a parked vehicle, driven by Young, leave the curb and travel into traffic without using a turn signal. The officer activated his patrol car's emergency lights to conduct a traffic stop. Young drove about a half-block before stopping in a no-parking zone, more than 12 inches from the curb, and near a fire station.

After obtaining Young's identification, Officer Chronister discovered that he had two outstanding warrants for his arrest. On the authority of the warrants, Officer Chronister arrested Young.

After Young's arrest, Officer Chronister decided to have the vehicle towed since it was illegally parked in a no-parking zone and was more than 12 inches from the curb. The officer did not offer Young the opportunity to have another person drive the vehicle away because he was not the registered owner. The registered owner of the vehicle—Mary Williams—listed an address in Lansing, Kansas.

Before the vehicle was towed, Officer Chronister was required to complete "a full inventory of all valuable items in the vehicle." During the inventory, the officer found a closed Bose headphones case and a camera bag. Upon opening these containers, Officer Chronister found drugs and drug paraphernalia. Finally, Officer Chronister found a stolen, loaded handgun under the driver's seat.

The State charged Young with possession of methamphetamine with intent to distribute in violation of K.S.A. 2016 Supp. 21-5705(a)(1), possession of drug

2

paraphernalia in violation of K.S.A. 2016 Supp. 21-5709(b)(1), criminal possession of a firearm in violation of K.S.A. 2016 Supp. 21-6301(a)(2), and theft of a firearm in violation of K.S.A. 2016 Supp. 21-5801(a)(1) and (b)(7).

Prior to trial, Young moved to suppress the incriminating evidence obtained during the inventory search. In support of his motion, Young argued that the ordinance and corresponding statute relied on to support the traffic stop were unconstitutionally vague. Young also asserted that (1) the decision to impound the vehicle was unreasonable under the totality of the circumstances, and (2) Officer Chronister lacked justification to open the headphones case and camera bag because the Kansas City, Kansas Police Department (KCKPD) had no policy regarding opening containers during an inventory search.

The district court held an evidentiary hearing on Young's motion to suppress. At the hearing, Officer Chronister was the only witness. The officer testified that he initiated a traffic stop upon observing Young violate a municipal ordinance by pulling away from the curb without using a turn signal. After Officer Chronister activated his emergency lights, Young stopped in a no-parking zone and his vehicle was more than 12 inches from the curb.

After Young's arrest, Officer Chronister decided to have the vehicle towed. The officer explained that Young had parked the vehicle in a no-parking zone less than a half-block from a fire station. Officer Chronister presumed the no-parking zone was established to facilitate the movement of emergency vehicles. According to the officer, the vehicle was towed in accordance with the KCKPD towing policy because the vehicle was a traffic hazard, Young was unable to remove the vehicle upon his arrest, and the vehicle was illegally parked.

3

Officer Chronister testified that KCKPD policies do not require officers to provide individuals with the opportunity to recover a vehicle, unless the vehicle is stolen and the registered owner takes custody of the vehicle. Here, the vehicle was not reported as stolen, Young was not the registered owner of the vehicle, and the registered owner had a different last name than Young and had a Lansing address. Moreover, other than the address, Officer Chronister had no information to contact the registered owner.

Young did not ask that another person pick up the vehicle after his arrest. Officer Chronister also did not offer to have someone drive the vehicle away. The officer reasoned that KCKPD officers typically provide 20 minutes for another person to retrieve a vehicle and Lansing was too far away. Officer Chronister did not believe it would be appropriate for Young to wait handcuffed in the back of his patrol vehicle for an extended period of time waiting for someone to recover the vehicle. Moreover, Officer Chronister would not have allowed Young to arrange for the vehicle to be picked up since Young was not the registered owner, and the officer had no way of knowing whether Young was permitted to use the vehicle or whether a third party could be trusted with the vehicle. Finally, under the circumstances, the officer had no way to verify the true identity of the registered owner assuming that the owner was reached by telephone. In summary, under the circumstances, Officer Chronister decided to have the vehicle towed.

Officer Chronister testified regarding his inventory of the vehicle prior to being towed. According to the officer, KCKPD towing policies required officers to complete a full inventory of an impounded vehicle by documenting all valuable items located inside it. Officer Chronister testified that it was routine to open containers while performing a vehicle inventory. KCKPD officers are trained to open containers as part of a vehicle inventory. Officer Chronister believed that opening containers is required to inventory all valuables and record the items' color, model, and possible serial numbers.

4

During the vehicle inventory, Officer Chronister found a black Bose headphones case, which did not feel like it contained headphones. Since the case was closed, Officer Chronister opened it to inventory any valuable items inside the case. Upon opening the case, the officer found a bag of methamphetamine and a digital scale. Officer Chronister next opened the camera bag, which contained another digital scale, butane lighters, glass pipe, sandwich bags, and rubber gloves. Finally, Officer Chronister discovered the stolen firearm under the driver's seat.

After considering the evidence, the district court denied Young's motion to suppress. First, the district court found the municipal ordinance relied on to initiate the traffic stop and corresponding statute—K.S.A. 8-1548—were not unconstitutionally vague. Second, the district court determined that Officer Chronister's decision to tow the vehicle was reasonable. Finally, the district court ruled that Officer Chronister did not violate Young's Fourth Amendment rights by opening the headphones case and camera bag during the inventory of the vehicle.

At a bench trial on stipulated facts, the district court found Young guilty of possession of methamphetamine with intent to distribute, possession of drug paraphernalia, criminal possession of a firearm, and theft of a firearm. Based on a criminal history score of C, the district court sentenced Young to a controlling term of 123 months in prison.

Young appeals the denial of his motion to suppress evidence. He contends the district court erred by denying his motion to suppress and he reprises the same three arguments he raised in the district court: (1) K.S.A. 8-1548 and the corresponding Kansas City, Kansas municipal ordinance are unconstitutional; (2) Officer Chronister's decision to impound the vehicle was unreasonable; and (3) Officer Chronister's actions of opening the headphones case and camera bag were unconstitutional. Each issue will be separately addressed.

Of note, the State briefs the issue of whether the district court erred by classifying Young's prior Missouri conviction for resisting arrest as a nonperson felony when calculating his criminal history score. This issue was not docketed as a cross-appeal, however, and as a result it is not properly before our court for decision.

GENERAL STANDARD OF REVIEW

When reviewing a district court's ruling on a motion to suppress, our court reviews the district court's factual findings for substantial competent evidence and exercises unlimited review over the ultimate legal conclusions. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). In reviewing the factual findings, an appellate court does not reweigh the evidence or assess the credibility of witnesses. But when the parties do not dispute the material facts on the motion to suppress, the question of suppression becomes exclusively a question of law over which our court exercises unlimited review. 307 Kan. at 827.

CONSTITUTIONALITY OF K.S.A. 8-1548
AND KANSAS CITY, KANSAS ORDINANCE § 35-346

Young contends the district court erred by ruling that the municipal ordinance and corresponding state statute that Officer Chronister relied on to justify the traffic stop were not unconstitutional. Young argues that the Unified Government of Wyandotte County/Kansas City, Kansas Code of Ordinances § 35-346 (Ordinance § 35-346) and K.S.A. 8-1548 are facially unconstitutionally vague because they invite arbitrary enforcement and fail to give fair notice of the conduct they punish.

During the suppression hearing, Officer Chronister testified that he initiated a traffic stop on Young after observing him violate Ordinance § 35-346 by not using his turn signal when turning onto the roadway from his parked position. This ordinance provides that "[a] signal of intention to turn or move right or left when required shall be

6

given continuously during not less than the last 100 feet traveled by vehicle before turning." This section mirrors the language used in K.S.A. 8-1548(b).

At the outset, it is important to note that Young does not claim that Officer Chronister mistakenly interpreted the provisions of Ordinance § 35-346, or that he did not have reasonable suspicion to stop Young's vehicle for a violation of Ordinance § 35-346. Rather, Young contends the provisions of the ordinance and K.S.A. 8-1548, on their face, are unconstitutionally vague.

Whether a statute is constitutional raises a question of law subject to unlimited review. *State v. Gonzalez*, 307 Kan. 575, 579, 412 P.3d 968 (2018). Our court presumes that statutes are constitutional and resolves all doubts in favor of the statute's validity. Additionally, courts must interpret a statute in a way that makes it constitutional if there is any reasonable construction that will maintain the Legislature's apparent intent. 307 Kan. at 579. These same presumptions and standards of review apply when determining whether an ordinance is constitutional. *Huffman v. City of Maize*, 54 Kan. App. 2d 693, 697-98, 404 P.3d 345 (2017). Young bears the burden to overcome the presumption of validity and show that the ordinance and corresponding statute are unconstitutional. See *Gonzalez*, 307 Kan. at 579.

Our court uses a two-prong inquiry to determine if a statute or ordinance is unconstitutionally vague. *City of Lincoln Center v. Farmway Co-Op, Inc.*, 298 Kan. 540, 545, 316 P.3d 707 (2013). First, the court determines whether the statute or ordinance conveys a sufficiently definite warning and fair notice of the prohibited conduct in light of common understanding and practice. Second, the court determines whether the statute's or ordinance's terms are precise enough to guard against arbitrary and discriminatory enforcement. A statute or ordinance is invalid if it violates either prong. 298 Kan. at 545.

7

A statute or ordinance is unconstitutionally vague if it "'requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" 298 Kan. at 545. But a statute or ordinance is not unconstitutionally vague if it employs words that are commonly used, previously judicially defined, or have settled legal meanings. 298 Kan. at 545. "'At its heart the test for vagueness is a common-sense determination of fundamental fairness.'" *State v. Bollinger*, 302 Kan. 309, 318, 352 P.3d 1003 (2015) (quoting *State v. Kirby*, 222 Kan. 1, 4, 563 P.2d 408 [1977]).

Our Supreme Court has held that "[i]f a law enforcement officer observes a person violate K.S.A. 8-1548, then the officer has probable cause to seize that person for purposes of investigating the violation." *State v. Greever*, 286 Kan. 124, Syl. ¶ 11, 183 P.3d 788 (2008). In *Greever*, the court considered K.S.A. 8-1548 and determined the language was not vague, but was clear and unambiguous:

> "The plain language of K.S.A. 8-1548 provides that anyone turning a vehicle must provide an appropriate signal—namely, a turn signal given continuously for at least 100 feet before the turn. The statute does not provide any exception to this rule, nor does it indicate that a person must possess a particular criminal intent in order to be found guilty of the infraction described." 286 Kan. 124, Syl. ¶ 8.

Given our Supreme Court's construction of the statute, K.S.A. 8-1548 and the corresponding ordinance convey a sufficient and definite warning and fair notice to drivers of the prohibited conduct. Specifically, a driver must use a turn signal continuously for at least 100 feet before a turn. Considering the second prong of our vagueness inquiry, the terms of the statute and ordinance are precise enough to guard against arbitrary and discriminatory enforcement. Drivers who fail to signal at least 100 feet before a turn violate the statute and ordinance, despite the driver's intent or any exigent circumstances. "K.S.A. 8-1548(b), as construed by our Supreme Court, is not

8

unconstitutionally vague." *State v. Greever*, No. 95,303, 2008 WL 5401107, at *2 (Kan. App. 2008) (unpublished opinion).

As he did in the district court, Young concedes our Supreme Court's holding in *Greever* is contrary to his legal argument, but he asserts the decision in *Greever* is erroneous. He essentially asks our court to overrule *Greever*. Of course, our court is duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). Young provides no indication that our Supreme Court is departing from *Greever*, and we are unaware of any change in this precedent. As a result, we adhere to our Supreme Court's opinion regarding the construction of K.S.A. 8-1548(b) and find that statute and Ordinance § 35-346 are not unconstitutionally vague on their face.

The district court did not err by concluding that K.S.A. 8-1548 and Ordinance § 35-346 are constitutional.

WAS THE DECISION TO IMPOUND THE VEHICLE REASONABLE?

Young contends the district court erred by ruling that the vehicle's impoundment was reasonable under the totality of the circumstances. He argues that Officer Chronister's failure to consult with him regarding the disposition of the vehicle was unreasonable.

Our analysis begins with a brief overview of search and seizure jurisprudence as it pertains to the impoundment and inventory of motor vehicles. A warrantless search is per se unreasonable under the Fourth Amendment to the United States Constitution unless the search falls under one of the recognized exceptions to the warrant requirement. *State v. Doelz*, 309 Kan. 133, 140, 432 P.3d 669 (2019). An inventory search is recognized as one exception to the warrant requirements of the Fourth Amendment. 309 Kan. at 140; *State*

9

*v. Shelton*, 278 Kan. 287, 293-94, 93 P.3d 1200 (2004). Inventory searches serve the purpose of protecting the owner's property while in police custody, protecting against claims or disputes over stolen or lost property, and guarding police from potential danger. *State v. Branstetter*, 40 Kan. App. 2d 1167, 1170, 199 P.3d 1272 (2009). However, the inventory search "must not be a ruse for general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990).

An inventory search of a vehicle is not valid unless the police first obtain lawful custody of the vehicle. *Shelton*, 278 Kan. at 294. "The police must have authorization by statute or ordinance to lawfully impound a vehicle . . . . If the police do not have express authority to impound a vehicle, they may still take lawful custody of a vehicle when there are 'reasonable grounds' for impoundment." *State v. Teeter*, 249 Kan. 548, 550-51, 819 P.2d 651 (1991).

The prosecution has the burden to prove the impoundment was reasonable under the totality of the circumstances. *Shelton*, 278 Kan. at 293. While no bright-line rule exists, our Supreme Court has identified six situations that constitute reasonable grounds for impoundment. Two of these situations have particular relevance to the facts of this case: (1) removing "'an unattended-to car illegally parked or otherwise illegally obstructing traffic'" and (2) removing "'an abandoned car.'" 278 Kan. at 294 (quoting *Teeter*, 249 Kan. at 552).

Applying this law to the facts at hand, Officer Chronister had statutory authority to tow Young's vehicle under K.S.A. 8-1570(b), which authorizes an officer to remove an unattended vehicle illegally left standing on a highway. In particular, the vehicle was illegally standing in a no-parking zone more than 12 inches from the curb. Since Young was the sole occupant, his arrest and police custody effectively rendered the vehicle unattended. *Shelton*, 278 Kan. at 298-99; *State v. Wilson*, No. 115,554, 2017 WL

3444509, at *3 (Kan. App. 2017) (unpublished opinion) ("A motor vehicle can be considered unattended if the driver has been arrested and no one else is present to remove or lawfully park it."), *rev. denied* 307 Kan. 994 (2018). Accordingly, Officer Chronister had a statutory basis to impound Young's vehicle and have it towed.

In addition to the statutory authority provided under K.S.A. 8-1570(b), Officer Chronister also had reasonable grounds for impoundment. Removing an unattended car which is illegally parked is recognized as a reasonable basis to impound a vehicle. Moreover, Officer Chronister's decision to impound the vehicle was supported by KCKPD towing policies. These towing policies provide that when an officer has arrested a driver, the officer may order the towing of the vehicle if it is illegally parked and unattended.

Young argues that Officer Chronister's decision to impound the vehicle was unreasonable because the officer never consulted with him regarding the disposition of the vehicle. In *State v. Fortune*, 236 Kan. 248, 257, 689 P.2d 1196 (1984), our Supreme Court stated:

"If the owner, operator or person in charge of the vehicle is readily available to make a determination as to the disposition of the vehicle then he may do so. If the person responsible for the vehicle desires that the vehicle be left lawfully parked upon the streets or that it be turned over to some other person's custody, then, absent some other lawful reason for impounding the vehicle, his or her wishes must be followed. Only when a vehicle is found illegally parked and unattended, or where the person responsible for its possession is unable (as in the instant case) or unwilling to instruct the arresting officers as to the vehicle's disposition or some other legal reason justifying impoundment exists should the officers assume control over the vehicle."

The Kansas Supreme Court later clarified *Fortune*'s holding in *Shelton* when the court found that the "Fourth Amendment does not require police to allow an arrested

11

person to arrange for the disposal or removal of his or her vehicle to avoid impoundment." 278 Kan. at 293. Instead, the Fourth Amendment requires that the impoundment be reasonable and consultation is but one factor considered among the totality of the circumstances. 278 Kan. at 293. If reasonable grounds otherwise exist for impounding a vehicle, officers need not consult the defendant regarding an alternative disposition of the vehicle. 278 Kan. at 297.

Officer Chronister did not consult with Young regarding the disposition of the vehicle. Despite this, we are persuaded that the officer's decision to impound the vehicle was reasonable under the totality of circumstances. As noted earlier, Young illegally parked the vehicle in a no-parking zone more than 12 inches from the curb. Officer Chronister believed the no-parking zone was in place to allow emergency vehicles to easily enter and exit the nearby fire station. The vehicle would be left unattended following Young's arrest and the registered owner of the vehicle had an out-of-town address. While Young was available to suggest an alternative disposition, he was not the registered owner of the vehicle and did not object or offer any alternative to towing the vehicle. Since reasonable grounds existed for impoundment, Officer Chronister was not required to consult Young regarding disposition of the vehicle.

The district court did not err by finding that Officer Chronister's decision to impound the vehicle was reasonable.

DID THE SEARCH OF THE CLOSED CONTAINERS VIOLATE THE FOURTH AMENDMENT?

For Young's third claim, he contends the district court erred by finding that Officer Chronister's actions of opening the headphones case and camera bag were constitutional. Young asserts that Officer Chronister violated his Fourth Amendment rights by opening the containers because the KCKPD does not follow an established protocol to conduct

12

inventory searches and Officer Chronister could readily ascertain the likely contents of the containers.

We begin the analysis with a discussion of the standards of review and Fourth Amendment jurisprudence relating to the scope of inventory searches. As previously noted, an inventory search is an exception to Fourth Amendment warrant requirements. *Shelton*, 278 Kan. at 293. "A so-called inventory search is not an independent legal concept but rather an incidental administrative step following arrest and preceding incarceration." *Illinois v. Lafayette*, 462 U.S. 640, 644, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983). Standardized inventory procedures are appropriate to serve the legitimate governmental interests at stake during an impoundment, such as preserving an owner's property and protecting police against claims of lost or stolen property. *State v. Baker*, 306 Kan. 585, 590, 395 P.3d 422 (2017). The United States Supreme Court has held that "it is not 'unreasonable' for police, as part of the routine procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures." *Lafayette*, 462 U.S. at 648.

In Kansas "standardized criteria or an established routine must regulate the opening of containers found during inventory searches." *Baker*, 306 Kan. at 593. This requirement is predicated on the notion that an inventory search may not be a ruse for a general rummaging to discover incriminating evidence. Instead, the policies and practices that govern inventory searches should be designed to create an inventory. "'The individual police officer must not be allowed so much latitude that inventory searches are turned into "a purposeful and general means of discovering evidence of crime."'" 306 Kan. at 593 (quoting *Wells*, 495 U.S. at 4). But officers may open closed containers as part of an inventory search if they act in good faith under a standardized criteria or established routine. 306 Kan. at 594 (citing *United States v. Mendez*, 315 F.3d 132, 137 [2d Cir. 2002]).

Our Supreme Court has noted that "producing *no* evidence of a policy with respect to the opening of containers . . . does not pass constitutional muster." *Baker*, 306 Kan. at 594. That said, a policy may constitutionally provide officers with latitude to determine whether a certain container should be opened given the nature of the search and the characteristics of the container. *Wells*, 495 U.S. at 4.

"Thus, while policies of opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors. The allowance of the exercise of judgment based on concerns related to the purposes of an inventory search does not violate the Fourth Amendment." 495 U.S. at 4.

In this case, the State submitted evidence of the KCKPD's inventory policies. In particular, the KCKPD written tow policy provides that "[t]he towing officer shall complete a full inventory of all items of value found within the vehicle." The policy requires that "[c]omplete documentation and inventory, including all identifiers (serial number, model number, . . .) on each item will be recorded on the Tow-in Report or Property Report, whichever is applicable." As part of the inventory, "[a]ny item of great value . . . shall be recovered, tagged and forwarded to the Property Room for safekeeping." The KCKPD written tow policy also provides guidance on the scope of the inventory, instructing that "[i]f access (key or interior trunk release button) to the trunk and/or glove compartment is available, an inventory for anything of value will be made."

Consistent with the KCKPD written tow policy, Officer Chronister testified he needed to conduct an inventory of everything of value before impounding Young's vehicle. Officer Chronister explained that to conduct an inventory it was necessary to open containers—such as the headphones case and camera bag—to document the color, model, and serial numbers of the valuable items contained therein.

14

Of note, while the KCKPD written tow policy does not mandate that all closed containers must be opened, Officer Chronister stated that it was routine practice to open containers when performing an inventory. According to Officer Chronister, KCKPD officers were trained to open containers and he believed other officers also opened containers while performing an inventory search. In sum, the officer testified to an "established routine" regulating the opening of containers found during inventory searches. See *Baker*, 306 Kan. at 593.

Although the KCKPD written tow policy does not specifically mandate opening closed containers, "[s]tandardized criteria or routine may adequately regulate the opening of closed containers discovered during inventory searches without using the words 'closed container' or other equivalent terms." *United States v. Mundy*, 621 F.3d 283, 290 (3d Cir. 2010). When considering similar inventory policies, courts have found they provide sufficiently standardized criteria on the scope of a permissible inventory scope, even though the policy does not mention closed containers. See, e.g., 621 F.3d at 290-93; *United States v. Matthews*, 591 F.3d 230, 236-39 (4th Cir. 2009); *United States v. Wilson*, 938 F.2d 785, 789-90 (7th Cir. 1991).

For example, the written policy at issue in *Matthews* stated that "[a] complete inventory will be taken on all impounded or confiscated vehicles including the interior, glove compartment and trunk." 591 F.3d at 233. Matthews challenged an inventory search after a deputy found cocaine in a closed suitcase and argued that the deputy could not have followed a standardized criteria since the department policy does not mention how to handle closed containers. The Fourth Circuit of the United States Court of Appeals disagreed and held that the department policy "sufficiently regulates the opening of such containers to provide standardized criteria to justify [the deputy's] search of Matthews's bags." 591 F.3d at 237. The court reasoned that "[o]nly by performing a full inventory of the car—which includes opening closed containers—could an officer identify all the vehicle's valuables and effectively secure them." 591 F.3d at 237-38.

15

Similar to the policy in *Matthews*, the KCKPD written tow policy provides sufficiently standardized criteria regulating the scope of a permissible inventory search, including the search of closed containers. The policy requires "a full inventory of all items of value found within the vehicle." Only by opening all closed containers which might contain valuable items could an officer effectively comply with the requirement for a full inventory of all valuable items. Moreover, Officer Chronister's testimony also shows that the KCKPD had an established routine practice of opening containers to document potential valuables as officers were trained to open containers during an inventory search. A search of unlocked containers that may hold valuable items falls within the KCKPD policies and procedures and does not violate the Fourth Amendment. See *Mundy*, 621 F.3d at 291.

Although Officer Chronister recognized the containers as a headphones case and camera bag—obviously containers which would hold items of value—it was not unreasonable to open the containers to confirm that they held the valuable items that they appeared to carry—and document all identifiers such as possible serial or model numbers. This process was in keeping with the KCKPD written tow policy, procedures, and practice. Moreover, while Officer Chronister doubted that the headphones case did contain headphones, he testified it was necessary to open the case to determine if the items inside the case were valuable.

While the KCKPD written tow policy does not explicitly mention closed containers, its requirement that officers complete "a full inventory of all items of value found within the vehicle" sufficiently regulated the scope of a permissible inventory search of the headphones case and camera bag. Moreover, Officer Chronister acted in accordance with KCKPD established routine practice and standardized training by opening the containers to determine if they contained valuable items.

16

The district court did not err by ruling that Officer Chronister's search of the headphones case and camera bag did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures. Accordingly, the district court did not err by denying Young's motion to suppress.

Affirmed.