No. 105,962

CITY OF LINCOLN CENTER, *Appellant*, v. FARMWAY CO-OP, INC.
and FARMWAY STORAGE #1, LLC, *Appellees*.

(316 P.3d 707)

Opinion filed December 20, 2013.

*Daniel D. Metz*, city attorney, argued the cause and was on the briefs for appellant.

*David M. Traster*, of Foulston Siefkin LLP, of Wichita, argued the cause and was on the briefs for appellees.

*Sandra Jacquot*, of Topeka, was on the brief for *amicus curiae* League of Kansas Municipalities.

*Brent E. Haden*, of Columbia, Missouri, was on the brief for *amicus curiae* Kansas Cooperative Council.

*Robin K. Carlson*, and *Daniel D. Crabtree*, of Stinson Morrison Hecker LLP, of Kansas City, Missouri, was on the brief for *amicus curiae* Kansas Grain & Feed Association.

The opinion of the court was delivered by

Nuss, C.J.: The City of Lincoln Center (City) cited Farmway Co-Op, Inc., and Farmway Storage #1, LLC (together "Farmway") for violating municipal noise and nuisance ordinances. The violations arose out of Farmway's operation of a grain elevator facility inside the city limits. After the municipal court convicted Farmway under both ordinances, the district court reversed the convictions, holding the ordinances are unconstitutionally vague. The Court of Appeals affirmed the district court. We granted the City's petition for review and have jurisdiction under K.S.A. 60-2101(b).

We agree with the district court and Court of Appeals that the City's noise ordinance is unconstitutionally vague. As applied to Farmway, it fails to protect against arbitrary enforcement. But as for the nuisance ordinance, we hold it is constitutional as applied to Farmway. So we affirm in part, reverse in part, and remand to the district court for further proceedings.

## FACTS

### Farmway's expansion and residents' complaints

The material facts are essentially undisputed. Farmway owns and operates a grain elevator facility inside the city limits of Lincoln Center. The area immediately surrounding the facility is residential.

In December 2008, Farmway applied for a building permit to expand the facility through constructing a new grain bin plus four grain aeration fans needed for proper storing and drying of the grain. The new bin was to be 124 feet tall and 74 feet in diameter.

Later that month Farmway sent a letter to the City supporting its permit application which stated it hoped the project would "help control some dust and noise concerns for the neighborhood." While the City granted Farmway's building permit, the approval of building permits outside of flood hazard areas has been described as "essentially automatic."

Farmway did not conduct any formal studies to determine how the expansion would affect the surrounding areas. But it did have "discussions" with nearby residents before the project was completed. The record on appeal does not contain details about the discussions, but they apparently pertained to noise and dust that the new facility would create.

Farmway began operating its expanded facility in July 2009. According to later municipal court testimony by nearby residents, the expansion significantly increased the noise and dust levels around the facility. The residents further testified the aeration fans made noises that prevented them from sleeping, conversing, watching television, and enjoying the outdoors. One resident testified that his family was forced to leave home one night to get some sleep in a motel. According to further testimony, the expanded facility caused large clouds of grain dust that reduced visibility and aggravated respiratory problems for some residents. Residents also complained to City officials and Farmway regarding the increased noise and dust.

*Farmway's remedial measures and regulatory compliance*

In response to the residents' complaints, Farmway took several steps to reduce the levels of noise and dust. The month after operations began at the expanded facility, Farmway contacted the aeration fans' manufacturer, Airlanco, about the noise. Airlanco's engineering manager repaired cracking on the fans and stiffened the fans' supports. But the repairs did not reduce the noise. The following November Airlanco replaced the noisiest fan wheel. But still the facility generated noise that residents found bothersome. Later that month Farmway switched the aeration fans from automatic to manual control to prevent their running at night. Finally,

in early 2010, Farmway installed sound-dampening enclosures for each fan, which solved the excessive noise issue.

As for the dust issue, the facility's evacuation system pulls dust from the grain and expels some of it into the air. Additionally, Farmway uses a tank truck for watering the roads and driveways at the facility to minimize the dust created by truck traffic. And Farmway's President and CEO Arthur Duerksen testified in municipal court that of the 23 grain elevator facilities in the Farmway system, the Lincoln Center facility produces the least amount of dust.

It is undisputed that Farmway has complied with all pertinent state and federal regulations regarding dust and noise. As a voluntary participant in the Occupational Safety and Health Administration's 12-D program, Farmway requested that the program's administrator, the Kansas Department of Labor (KDOL), send an industrial hygienist to measure noise and dust levels at the facility. In February and March 2010, KDOL measured noise and dust levels there and found the working conditions to be safe. Both of these visits occurred after Farmway had already installed the sound-dampening enclosures. Additionally, the Kansas Department of Health and Environment (KDHE) made unannounced visits to the facility in response to complaints of excessive noise and dust. KDHE visited Farmway's facility to test dust levels both before the expansion and afterward. Both times the dust levels were within regulatory limits.

*The City's action against Farmway*

Within a week of the last KDHE visit to test dust levels, the City cited Farmway for violating the noise ordinance, No. 643, and the nuisance ordinance, No. 633, because of the noise and dust generated by the expanded facility. After a bench trial, the municipal court found Farmway guilty of violating both ordinances, levied fines of $800, and assessed $66 in court costs against Farmway.

After Farmway's appeal to the Lincoln County District Court, it filed a motion to dismiss the charges, arguing that both the noise and nuisance ordinances are unconstitutionally vague. The district court granted dismissal, holding that both ordinances are uncon-

stitutionally vague because they do not warn potential violators of what conduct is prohibited and also fail to adequately guard against the risk of arbitrary enforcement.

The City appealed, and the Court of Appeals affirmed the district court's dismissal. *City of Lincoln Center v. Farmway Co-Op, Inc.*, 47 Kan. App. 2d 335, 274 P.3d 680 (2012). For the panel, Judge Pierron wrote that the City's noise ordinance was unconstitutionally vague because it "does not give fair warning to those potentially subject to its reach" and "does not adequately guard against arbitrary and discriminatory enforcement." 47 Kan. App. 2d at 345-46. For the same reasons, he also concluded that the nuisance ordinance is unconstitutionally vague. Chief Judge Greene and Judge Marquardt simply concurred in the result. We granted the City's petition for review by this court.

## ANALYSIS

The City challenges the district court and Court of Appeals holdings that both the City's noise ordinance and nuisance ordinance are unconstitutionally vague. Our standard of review and our rules for determining impermissible vagueness are set forth below and then applied to each ordinance in turn.

### Standard of review

The constitutionality of an ordinance is a question of law, which we review de novo. *City of Wichita v. Hackett*, 275 Kan. 848, 853, 69 P.3d 621 (2003) (citing *Boyles v. City of Topeka*, 271 Kan. 69, 72, 21 P.3d 974 [2001]).

### General rules

When reviewing the constitutionality of an ordinance, we must (1) presume the ordinance is constitutional; (2) resolve all doubts in favor of validating the ordinance; (3) uphold the ordinance if there is a reasonable way to do so; and (4) strike down the ordinance only if it clearly appears to be unconstitutional. *Hackett*, 275 Kan. at 853. The party asserting the unconstitutionality of an ordinance has a weighty burden because this court has "a duty to preserve the validity of the ordinance and to search for ways to uphold its constitutionality." 275 Kan. at 853.

In determining whether an ordinance is unconstitutionally vague, we subject it to a two-pronged inquiry. *Steffes v. City of Lawrence*, 284 Kan. 380, 389, 160 P.3d 843 (2007) (citing *Hackett*, 275 Kan. at 853-54). First, the ordinance must give adequate notice to those tasked with following it. More specifically, the ordinance must "convey sufficient definite warning and fair notice as to the prohibited conduct in light of common understanding and practice." *Steffes*, 284 Kan. at 389 (citing *Hackett*, 275 Kan. at 853-54). We have recognized that an ordinance that " 'requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process.' " *Hackett*, 275 Kan. at 853 (citing *State v. Dunn*, 233 Kan. 411, 418, 662 P.2d 1286 [1983]); see *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926). But on the other hand, Kansas has long held that an ordinance is not unconstitutionally vague if it employs words commonly used, previously judicially defined, or having a settled meaning in law. *Hackett*, 275 Kan. at 853-54 (citing *City of Wichita v. Lucero*, 255 Kan. 437, 451, 874 P.2d 1144 [1994]).

In the second prong of our inquiry, we require that an ordinance's terms must be precise enough to adequately protect against arbitrary and discriminatory action by those tasked with enforcing it. *Steffes*, 284 Kan. at 389 (citing *Hackett*, 275 Kan. at 854); see *Hill v. Colorado*, 530 U.S. 703, 732, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000). We acknowledge that a law is invalid if it violates either prong. *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999). However, "the more important aspect of the vagueness doctrine 'is not actual notice but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.' " *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983) (citing *Smith v. Goguen*, 415 U.S. 566, 574-75, 95 S. Ct. 1242, 39 L. Ed. 2d 605 [1974]). And in analyzing this second prong for vagueness, we are further mindful that "[t]he standards of certainty in a[n ordinance] punishing criminal offenses are

higher than in those depending primarily upon civil sanctions for enforcement." *Steffes*, 284 Kan. at 389.

Our two-pronged vagueness inquiry is based upon the acknowledgment that "vague laws offend several important values." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972).

" 'First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' [*State v.*] *Bryan*, 259 Kan. [143,] 145-46[, 910 P.3d 212 (1996) (citing *Grayned*, 408 U.S. at 108-09)]." *Hackett*, 275 Kan. at 854.

With these standards and rules in mind, we now proceed to apply them to the facts of this case.

*Issue 1: The City's noise ordinance is unconstitutionally vague as applied to Farmway.*

The City's noise ordinance under which Farmway was convicted, No. 643, provides in relevant part:

"Section 1. DISTURBING THE PEACE. It is unlawful for any person to make, continue, maintain or cause to be made or continue any excessive, unnecessary, unreasonable or unusually loud noise which either annoys, disrupts, injures or endangers the comfort, repose, health, peace or safety of others within the City."

Farmway argues that this ordinance is unconstitutionally vague because it does not contain an objective standard of conduct. Farmway asserts that this means a failure to provide both (1) adequate notice of what conduct is prohibited and (2) protection against arbitrary enforcement. More specifically, it argues that the modifiers "excessive," "unnecessary," and "unusually" are inherently vague because determining their meaning requires consideration of the listener's subjective predilections.

Farmway further argues that the effects of the prohibited noise, including annoying or disrupting the comfort or repose of others, also require impermissible consideration of the listener's subjective

reactions to the noise. It emphasizes that the ordinance terms are disjunctive, *i.e.*, enforcement can arise when any combination of the terms is satisfied. It also notes that the disjunctive language means the ordinance's one objective standard—"unreasonable"—does not save the ordinance because that standard need not always be considered for a violation to occur. Finally, Farmway argues that the ordinance must be strictly construed in its favor because the ordinance is a criminal one. See *State v. Marks*, 297 Kan. 131, 145, 298 P.3d 1102 (2013) (citing *State v. Coman*, 294 Kan. 84, 96, 273 P.3d 701 [2012]) ("As a general rule, criminal [laws] must be strictly construed so that any reasonable doubt about the meaning is decided in favor of the accused.").

The City responds that the inclusion of "unreasonable," "injures or endangers," and "health . . . or safety" are sufficient to save the ordinance from Farmway's vagueness challenge. It argues that because an appellate court is obligated to uphold an ordinance if it has any valid application, we should look at the more objective language, which it contends gives the ordinance sufficient clarity. The City correctly notes that this court has upheld laws with objective standards as sufficiently clear to defeat a vagueness challenge. See, *e.g.*, *Smith v. Martens*, 279 Kan. 242, 253, 106 P.3d 28 (2005) ("[The criminal stalking statute,] K.S.A. 2003 Supp. 60-31a02[,] is not unconstitutionally vague on its face because two objective standards are used to modify the terms alarms, annoys, torments, or terrorizes . . . ."); *State v. Fisher*, 230 Kan. 192, 193, 631 P.2d 230 (1981) (holding a child endangerment statute, K.S.A. 21-3608, was not unconstitutionally vague because " '[r]easonable' and 'unreasonable' are words of common usage, readily understood").

The City also considers its noise ordinance in relation to those that were addressed in two cases from panels of the Court of Appeals, *Luna v. City of Ulysses*, 28 Kan. App. 2d 413, 17 P.3d 940 (2000), and *City of Wichita v. Smith*, 31 Kan. App. 2d 837, 75 P.3d 1228 (2003). In *Luna*, the noise ordinance prohibited " 'any unnecessarily loud or excessive noise or sound which is physically or mentally annoying or disturbing to another person or persons or which disturbs the peace, quiet, or comfort of another person or

persons.' " 28 Kan. App. 2d at 413-14. By contrast, in *Smith*, the noise ordinance provided that " '[i]t is unlawful for any person to make . . . any excessive, unnecessary, unusual or loud noise which creates a nuisance or injures or endangers the comfort, repose, health or safety of others, or which interferes with the use or enjoyment of property of any person of *reasonable sensibilities*.' " (Emphasis added.) 31 Kan. App. 2d at 840.

The Court of Appeals panel in *Luna* concluded the noise ordinance failed both prongs of the vagueness inquiry because its language was entirely subjective. It contained no objective standards for determining what level of noise the ordinance prohibited or judging a complainant's sensitivity to the noise.

But the *Smith* panel upheld its challenged ordinance. Although that ordinance contained some language similar to the one held invalid in *Luna*, the *Smith* panel held that the distinguishing factor was the "reasonable sensibilities" standard for complainants. The panel held that the ordinance was not unconstitutionally vague because the reasonable sensibilities standard is an objective one by which all potential violations must be measured. And it concluded that an objective standard not only provides sufficient notice as to prohibited conduct but also prevents arbitrary enforcement. Here, the City argues that its noise ordinance is more like the ordinance found constitutional in *Smith* because it contains some objective language, *i.e.*, violation occurs when the noise is "unreasonable."

Farmway does not specify whether it challenges the constitutionality of the noise ordinance on its face or as the ordinance "was applied" to Farmway. But the Supreme Court has stated that facial constitutional challenges should be disfavored. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51, 128 S. Ct. 1184, 170 L. Ed. 2d 151 (2008) (noting that facial challenges are disfavored because they rest on speculation, run contrary to the fundamental principle of judicial restraint, and threaten to short-circuit the democratic process). Accordingly, we consider whether the noise ordinance was unconstitutionally vague as it was applied to Farmway.

Based upon the standards established in the caselaw of the Supreme Court and this court, we readily conclude the noise ordi-

nance is unconstitutionally vague as applied to Farmway. More particularly, it fails the second prong of the vagueness inquiry by failing to "convey sufficient clarity to those who apply the ordinance standards to protect against arbitrary and discriminatory enforcement." *Hackett*, 275 Kan. at 856. Consider the uncertainty facing the ordinance's enforcing agents when they determined, for example, whether Farmway's noise was "excessive," "unnecessary," or "unusually loud," which "disrupts" or "annoys" others in the City. The ordinance's lack of objective standards for making these determinations readily promotes varying and somewhat unpredictable bases for enforcement.

As noted in *Hackett*, this vagueness constitutes an impermissible delegation of basic policy matters to actors "for resolution on an ad hoc and subjective basis." 275 Kan. at 854. Further, because this is a criminal ordinance—"it is unlawful for any person to"— the necessary standards of certainty are "higher than in those depending primarily upon civil sanctions for enforcement." *Steffes*, 284 Kan. at 389.

Despite the City's reliance on *Smith*, the Court of Appeals panel correctly concluded that the inclusion of some objective modifiers is insufficient to save this ordinance. Because the ordinance's modifiers are disjunctive, there is no guarantee that conduct will only be punished when based exclusively on the objective standards. While the City is correct that its ordinance, in contrast to the one at issue in *Luna*, provides some objective criteria, its ordinance is still unconstitutionally vague because it applies to certain conduct that is necessarily defined by reference to subjective judgments. In contrast, the noise ordinance in *Smith* applied only if the person harmed was of "reasonable sensibilities." So objectivity pervaded the entire ordinance. 31 Kan. App. 2d at 840. Accordingly, *Smith* is easily distinguishable.

Because the ordinance fails one of the prongs in the vagueness inquiry, we need not address the other prong: adequate notice to those tasked with following it. See *Morales*, 527 U.S. at 56. We also do not address Farmway's possible facial challenge because it is disfavored. See *Washington State Grange*, 552 U.S. at 450-51 (explaining rationale). Because the noise ordinance is unconstitu-

tionally vague as applied to Farmway, we also will not consider its argument that the ordinance is unconstitutionally overbroad because its plain language criminalizes a substantial amount of constitutionally protected speech. See *State v. Gonzales*, 289 Kan. 351, 372, 212 P.3d 215 (2009) (declining to address alternative arguments when a decision on a different issue rendered the arguments moot).

*Issue 2: The City's nuisance ordinance is not unconstitutionally vague as applied to Farmway.*

The City's nuisance ordinance under which Farmway was convicted, No. 633, provides in relevant part:

"9.5 MAINTAINING PUBLIC NUISANCE. Maintaining a public nuisance is by act, or by failure to perform a legal duty, intentionally causing or permitting a condition to exist which injures or endangers the public health, safety or welfare. (K.S.A. 21-4106) "Maintaining a public nuisance is a Class C violation."

"9.6 PERMITTING PUBLIC NUISANCE. Permitting a public nuisance is knowingly permitting property under the control of the offender to be used to maintain a public nuisance, as defined in Section 9.5 of this article. (K.S.A. 21-4107)"

The City adopted this language in full from the Uniform Public Offense Code for Kansas Cities §§ 9.5, 9.6 (28th ed. 2012). Similarly, Kansas has adopted this language for its nuisance statute, K.S.A. 2012 Supp. 21-6204. And, according to *amicus* League of Kansas Municipalities, nearly 300 other municipalities also use this language in their nuisance ordinances.

Unlike with the noise ordinance, Farmway clearly makes an "as applied" argument regarding the nuisance ordinance. Specifically, it argues that the nuisance ordinance is unconstitutionally vague as applied to its facility because the ordinance fails to set forth ascertainable standards concerning prohibited dust and noise. In essence, Farmway argues that an ordinance setting forth only the effect of generalized conduct—actions that "injure" or "endanger," for example—cannot satisfy due process without specifying the type of conduct that causes the proscribed effect.

Instead, Farmway argues it is entitled to have its noise and dust emissions measured by objective, quantitative standards before it can be found guilty of a violation. Farmway analogizes to state and

federal safety regulations that prescribe specific levels of noise and dust, beyond which the conditions are unsafe. Without such standards, Farmway argues, the nuisance ordinance violates both prongs of the vagueness inquiry: (1) persons of common intelligence are left guessing about the level of dust and noise that will cause a criminal prosecution and (2) law enforcement is empowered to enforce the ordinance in an arbitrary manner. Such uncertainty, Farmway concludes, is precisely the evil the void-for-vagueness doctrine is meant to prevent. The Court of Appeals panel agreed, striking down the nuisance ordinance for not proscribing specific conduct.

The City responds that its police powers authorize it to define nuisance in more general terms. It asserts that the panel's decision holds the City to an unrealistic level of foresight and that the ordinance is entitled to more deference. The City also argues that the question of whether an ordinance is appropriate is properly decided in the first instance by the legislative body and that a court should only overturn that determination in the case of clear error. See *City of Lyons v. Suttle*, 209 Kan. 735, 738, 498 P.2d 9 (1972); *Grigsby v. Mitchum*, 191 Kan. 293, 302, 380 P.2d 363 (1963).

Based upon the standards established in the caselaw of the Supreme Court and this court, we conclude the nuisance ordinance is not unconstitutionally vague as applied to Farmway. We explain below.

In beginning our analysis, we observe that the constitutionality of a nuisance ordinance is reviewed under the same vagueness standards set forth above. See, *e.g.*, *Hackett*, 275 Kan. 848. But in addition to these standards, we are also mindful of the specific characteristics of nuisances. Under our precedents, whether an activity constitutes a nuisance is generally determined by reference to the interest invaded and the harm inflicted, not the nature or quality of the defendant's acts. See *Culwell v. Abbot Construction Co.*, 211 Kan. 359, 362, 506 P.2d 1191 (1973); *Hofstetter v. Myers, Inc.*, 170 Kan. 564, 568, 228 P.2d 522 (1951). We noted in *Hofstetter* that "the word nuisance is perhaps incapable of precise definition" but ultimately held that a nuisance is "that which annoys or causes trouble or vexation, that which is offensive or noxious, or

anything that works hurt, inconvenience or damage." 170 Kan. at 568. Municipalities must define "nuisance" in light of this understanding. And in turn it is our duty to preserve the validity of such municipal ordinances and to search for a way to construe their definition as constitutional. *Steffes*, 284 Kan. at 388-89.

We continue our analysis by acknowledging that the challenged portion of the City's nuisance ordinance prohibits any conduct that "injures or endangers the public health, safety, or welfare." We have held that an ordinance is not unconstitutionally vague if it employs words commonly used, previously judicially defined, or having a settled meaning in the law. See *Hackett*, 275 Kan. at 853-54. According to Black's Law Dictionary 607, 856 (9th ed. 2009), "injure" means to cause "any harm or damage," and "endanger" means to place in circumstances where injury may occur.

Moreover, we previously addressed "injure" and "endanger" when rejecting a vagueness challenge to a child endangerment statute, K.S.A. 21-3608. See *State v. Fisher*, 230 Kan. 192, 631 P.2d 239 (1981). There, the statute's subsection (b) prohibited "[u]nreasonably causing or permitting a child under the age of eighteen (18) years to be placed in a situation in which its life, body or health may be *injured or endangered.*" (Emphasis added.) 230 Kan. at 192. We concluded that its terms, including "injured or endangered," did not render subsection (b) unconstitutionally vague. On the contrary, we held that subsection (b) was "clear and understandable." 230 Kan. at 199-200. So per *Hackett*, we conclude these particular nuisance ordinance terms are widely understood in the legal context.

Likewise, the meaning of "public health," "public safety," and "public welfare" is widely understood in legal circles. Black's Law Dictionary defines "public health" as "[t]he health of the community at large." It defines "public safety" in similar terms as "[t]he welfare and protection of the general public, usu[ally] expressed as a governmental responsibility." And it likewise defines "public welfare" as "[a] society's well-being in matters of health, safety, order, morality, economic, and politics." Black's Law Dictionary 787, 1351, 1732 (9th ed. 2009). We note further that "public health, safety, and welfare" is a common legal term of art that encompasses

these three concerns. See *Small v. Kemp*, 240 Kan. 113, 116-17, 727 P.2d 904 (1986).

This phrase, and its close relative, is also frequently used in other Kansas statutes. See, *e.g.*, K.S.A. 2012 Supp. 2-2472(b) ("The secretary . . . may initiate such proceeding whenever the secretary has reason to believe that a pesticide poses a serious threat to the public health, safety and welfare . . . ."); K.S.A. 65-5007(a)(1) ("Statutory regulation . . . is the appropriate level when this level will adequately protect the public's health, safety or welfare."); K.S.A. 77-706(a)(1) ("the state agency shall prepare a written report .`. . that . . . [c]learly and specifically identifies the public health, safety or welfare risk . . . .").

Based on *Fisher* and *Hackett*, we readily conclude that the terms "injure" and "endanger" are not vague in the City's nuisance ordinance as applied to Farmway. More specifically, both helped provide sufficient notice to Farmway that its facility violated the nuisance ordinance and protected Farmway from arbitrary enforcement.

Based on *Hackett* and definitions from the sources cited above, we reach the same conclusion about application of the phrase "the public health, safety, or welfare." Unlike the City's noise ordinance, where harm was determined by reference to subjective standards of individuals, *e.g.*, the complainant's, the nuisance ordinance is violated only by conduct that injures or endangers the *public*. We hold the nuisance ordinance's adoption of a public standard was sufficient to notify Farmway that its facility was in violation and to protect against arbitrary enforcement.

In short, Farmway clearly was on notice that its facility was injuring or endangering the public's health, safety, or welfare. It is undisputed that Farmway knew the effect its facility's dust and noise had on the surrounding residential neighborhood—aggravating residents' health and disrupting many aspects of their lives— and that it took multiple steps to try to curtail the injurious effects. Simply put, the ordinance conveyed to Farmway "sufficient definite warning and fair notice as to the prohibited conduct in light of common understanding and practice." *Steffes*, 284 Kan. at 389.

This public standard also protected against arbitrary enforcement because the agents enforcing the ordinance were not free to prosecute based on their own ad hoc and subjective judgments or unique feelings about the facility. Stated another way, while the public standard is not explicitly objective, it nevertheless protects against arbitrary enforcement because the enforcers must consider how the community is affected. In sum, the ordinance was precise enough to adequately protect against arbitrary and discriminatory action by those tasked with enforcing it. See *Steffes*, 284 Kan. at 389.

Accordingly, we conclude that the nuisance ordinance was not unconstitutionally vague as applied to Farmway. Because Farmway makes only an "as-applied" challenge, we proceed no further.

Affirmed in part, reversed in part, and remanded for further proceedings.