NOT DESIGNATED FOR PUBLICATION

Nos. 114,884
114,885

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANDRAUS R.C. WESLEY,
*Appellant*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed February 3, 2017. Affirmed.


*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.


*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before SCHROEDER, P.J., BUSER, J., and WALKER, S.J.


*Per Curiam*:  In this consolidated appeal, Andraus R.C. Wesley claims the district court abused its discretion in revoking his probation in two separate cases without first imposing an intermediate sanction. He also argues the offender welfare language of K.S.A. 2015 Supp. 22-3716(c)(9) is unconstitutionally vague. Because we find Wesley's arguments to be without merit, we affirm.

1

On May 9, 2012, Wesley pled guilty in two separate cases to burglary, theft, attempted theft (case 12 CR 500), and criminal damage to property (case 12 CR 942). At his sentencing, the district court imposed a controlling prison term for both cases of 137 months. It granted the parties' joint request for a dispositional departure and placed Wesley on probation for 36 months.

The district court held a probation violation hearing in both cases on October 31, 2012. At the hearing, Wesley admitted to violating the conditions of his probation by riding in a car with more than one person who was not a family member and associating with known gang members. The district court revoked his probation. It ordered reinstatement of his probation in both cases after completion of a 60-day jail sanction. At a second probation violation hearing on May 16, 2013, Wesley admitted to violating a condition of his probation by twice testing positively for breath alcohol. Once again, the district court imposed a 60-day jail sanction. It also ordered him to complete a residential program afterwards and extended his probation term by 12 months from the original termination date.

On October 1, 2013, the State sought a warrant for Wesley's arrest, alleging he violated several conditions of his probation by having a temporary protection from stalking order entered against him, falsifying information when reporting his job search activities, and being out-of-place during his residential placement. At a probation violation hearing on November 6, 2013, the State waived its first allegation that Wesley had a protection from stalking order entered against him, and Wesley admitted to the remaining allegations. The district court, in turn, revoked his probation and imposed a modified controlling prison term of 122 months. Wesley appealed.

A panel of this court reversed the district court's ruling. *State v. Wesley*, No. 111,179, 2015 WL 3868716 (Kan. App. 2015) (unpublished opinion). We determined the newly enacted amendments to K.S.A. 2013 Supp. 22-3716, which generally require district courts to impose intermediate sanctions before revoking an offender's probation, controlled in all cases involving probation violations after July 1, 2013. 2015 WL 3868716, at *2-3. Because Wesley's probation violations occurred after July 1, 2013, we held the district court erred in refusing to apply K.S.A. 2013 Supp. 22-3716(c). 2015 WL 3868716, at *5. We also concluded the district court's findings failed to conform to the particularized finding requirement of K.S.A. 2013 Supp. 22-3716(c)(9) and, therefore, remanded the cases, instructing the district court "to either impose an intermediate sanction . . . or make the appropriate findings with particularity under K.S.A. 2013 Supp. 22-3716(c)(9)." 2015 WL 3868716, at *5.

The district court held a remand hearing on August 18, 2015. After hearing the parties' arguments, it concluded imposition of an intermediate sanction did not serve Wesley's welfare and found that no further community resources were available to the court. The district court then revoked Wesley's probation and ordered him to serve a modified controlling prison term of 122 months. Wesley timely appealed.

ANALYSIS

*Alleged abuse of discretion in denying intermediate sanctions*

Wesley's first argument on appeal is that the district court abused its discretion in revoking his probation without first imposing an intermediate sanction under K.S.A. 2015 Supp. 22-3716(c). Specifically, he challenges the district court's finding that imposition of an intermediate sanction did not serve his welfare. He does not contest that he violated his probation conditions.

Once there is evidence of a probation violation, the decision to revoke probation rests within the sound discretion of the district court. *State v. Skolaut*, 286 Kan. 219, 227-28, 182 P.3d 1231 (2008). Judicial discretion is abused if the action is: (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *Fischer v. State*, 296 Kan. 808, Syl. ¶ 8, 295 P.3d 560 (2013). As the appealing party, Wesley has the burden to establish an abuse of discretion. See *State v. Stafford*, 296 Kan. 25, 45, 290 P.3d 562 (2012).

When a person serving probation for a felony conviction violates a probation condition, a district court generally must impose an intermediate sanction before revoking an offender's probation. K.S.A. 2015 Supp. 22-3716(c)(1). These intermediate sanctions may include: jail sanctions of up to 18 days (K.S.A. 2015 Supp. 22-3716[c][1][B]); and prison sanctions for repeat violators of 120 or 180 days' length (K.S.A. 2015 Supp. 22-3716[c][1][C] and [D]).

In statutorily limited situations, a district court may, in the exercise of its discretion, bypass the intermediate sanctions and revoke an offender's probation. See *State v. Carpenter*, No. 111,029, 2015 WL 770208, at *5 (Kan. App. 2015) (unpublished opinion) (finding the abuse of discretion standard still applies to disposition decisions under K.S.A. 2015 Supp. 22-3716[c][9]). Those statutorily limited situations are: (1) a probationer absconds from supervision; (2) a probationer commits a new crime; or (3) *an intermediate sanction* either jeopardizes the public's safety or *does not serve the probationer's welfare*. K.S.A. 2015 Supp. 22-3716(c)(8) and (c)(9).

Here, in revoking Wesley's probation and imposing a modified prison sentence, the district court found imposition of an intermediate sanction did not serve his welfare. In so finding, the district court first noted, when it originally sentenced Wesley, it advised him that his probation was "unequivocally zero tolerance." It also noted it showed him leniency after his initial two probation violations, placing him in a residential program

4

after his second violation. The district court then determined, based on Wesley's failure to complete the residential program, imposition of an intermediate sanction did not serve his welfare.

> "[T]he Court now finds that the welfare of the offender, Mr. Wesley, will not be served by any further sanctions because he has expended all of the community resources that are available to offenders in this community.
>
> "We do have a residential facility here in Wichita. In all 105 counties in Kansas, it's the only facility of its nature anywhere in the State of Kansas, and it is reserved as a last resort before people are sent to prison. Mr. Wesley was given the opportunity to enter and successfully complete that program. He did not do so.
>
> "There are no other community [resources] available to him. So, certainly, his welfare would not be served by imposing any additional sanction because we've already given him every possible community sanction that is available."

First, Wesley claims the district court's statement that it had imposed every available community sanction was incorrect. He asserts the district court had actually not yet imposed an intermediate sanction and, as a result, the court's decision was based on a factual and legal error.

Wesley's claim is misguided. A review of the district court's bench ruling shows the district court was referring specifically to the lack of locally based programs and resources available to Wesley, particularly since Wesley had been unsuccessfully terminated from the local residential facility. The court did not refer to the intermediate sanctions of K.S.A. 2015 Supp. 22-3716(c). Indeed, the district court acknowledged Wesley's prior 60-day jail sanctions were not imposed under K.S.A. 2015 Supp. 22-3716(c) and, therefore, were not considered intermediate sanctions.

Otherwise, Wesley does not contend insufficient evidence supports the district court's factual finding that no community programs or resources were available to him.

5

See *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011) (A court commits an error of fact when "substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based."). Further, Wesley cites no authority to support his claim that the district court's finding was a legal error. Consequently, his first claim fails.

Wesley next asserts the district court's revocation of his probation was based on another error of law. Specifically, he claims the district court improperly relied on his two prior probation revocations in making an offender welfare finding. He states the district court's reasoning undermined the legislative purpose of the graduated sanctioning scheme of K.S.A. 2015 Supp. 22-3716(c).

However, as already noted, the district court commented that the prior 60-day jail sanctions could not be considered as intermediate sanctions. Further, Wesley's assertion relies on the false premise that a district court must always impose several intermediate sanctions before revoking an offender's probation. Contrary to his assertion, the plain language of K.S.A. 2015 Supp. 22-3716(c)(8) and (c)(9) specifically provides district courts with the option to bypass the intermediate sanctions in particular situations. Although the legislature's enactment of K.S.A. 2015 Supp. 22-3716(c) shows its intent to provide offenders with multiple opportunities to successfully complete probation, it also recognizes that, under certain circumstances, intermediate sanctions should be bypassed. Thus, Wesley fails to demonstrate the district court's decision was based on an error of law.

Finally, Wesley argues his "welfare clearly would have benefited from an opportunity to avoid serving a decade-long prison sentence." Further, he contends the district court's offender welfare finding reflected the court's "desire to impose a particular sanction, rather than a logical application of statutory directive."

Wesley's final argument is not supported by the record. The district court specifically cited the lack of community-based programs and resources available to Wesley as the basis for its offender welfare finding. A conclusion that the district court made an offender welfare finding simply because it wanted to impose Wesley's underlying prison sentence requires this court to infer meaning from the district court's ruling that is not readily apparent. Further, Wesley's argument that he would have benefited from further probation is based on the false notion that prison is always detrimental. If that were the case, a district court could never make an offender welfare finding.

Moreover, an independent review of the record demonstrates a reasonable person could conclude imposition of an intermediate sanction did not serve Wesley's welfare. Over the course of his probation, Wesley's conduct demonstrated he was neither amenable to probation nor rehabilitated by it. After his third probation violation, Wesley had failed to complete a residential program, which the district court characterized as a remedy of "last resort." In so failing, Wesley demonstrated that he was not amenable to probation and any similar remedy was unlikely to prevent him from future harmful behavior. Although Wesley successfully completed two 60-day jail sanctions, his violating probation conditions for a third time also showed that he was not seriously committed to his reform and probation was likely ineffective in aiding his rehabilitation. Finally, because no further community resources were available to Wesley, continuation of his probation was likely to have a negligible impact on his rehabilitation.

In conclusion, Wesley has failed to demonstrate the district court abused its discretion in finding imposition of an intermediate sanction did not serve his welfare. As a result, the district court did not err in revoking his probation and imposing a modified prison sentence without first imposing an intermediate sanction. Wesley's first claim of error fails.

*Constitutionality of K.S.A. 2015 Supp. 22-3716(c)(9)*

As his second and final claim of error, Wesley asserts the offender welfare language of K.S.A. 2015 Supp. 22-3716(c)(9) is unconstitutionally vague.

As a preliminary matter, Wesley recognizes that he failed to raise this constitutional challenge before the district court. Generally, an appellant may not raise a constitutional issue for the first time on appeal. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). The Kansas Supreme has recognized three exceptions to the general rule:

> "(1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the district court is right for the wrong reason. [Citations omitted.]" 299 Kan. at 493.

Wesley accurately contends the first exception applies here. Indeed, Wesley's challenge only requires this court to determine whether the offender welfare language of K.S.A. 2015 Supp. 22-3716(c)(9) is facially vague—a legal question. We need not consider any particular facts, as Wesley does not claim the statute is vague as applied. Moreover, if this court finds the statute is unconstitutionally vague, its decision controls Wesley's case and renders the district court's probation revocation invalid, as made without authority. Therefore, because the first exception applies here, we may properly consider Wesley's constitutional challenge.

The question of whether a statute is constitutional presents a question of law subject to unlimited appellate review. *State v. Bollinger*, 302 Kan. 309, 318, 352 P.3d 1003 (2015), *cert. denied* 136 S. Ct. 858 (2016). In reviewing a statute, "[a]n appellate court presumes [a statute is] constitutional and must resolve all doubts in favor of a statute's validity. Further, an appellate court must interpret a statute in a manner that

renders it constitutional if there is any reasonable construction that will maintain the legislature's apparent intent." *State v. Soto*, 299 Kan. 102, Syl. ¶ 8, 322 P.3d 334 (2014).

To determine whether a criminal statute is unconstitutionally vague, a court employs a two-pronged inquiry. First, it assesses whether the statute gives adequate warning of the proscribed conduct. Then, it determines whether the statute adequately guards against arbitrary and unreasonable enforcement. *Bollinger*, 302 Kan. at 318.

K.S.A. 2015 Supp. 22-3716(c)(9) states:

> "The court may revoke the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction of an offender pursuant to subsection (c)(1)(E) without having previously imposed a sanction pursuant to subsection (c)(1)(B), (c)(1)(C) or (c)(1)(D) if the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction."

On appeal, Wesley argues the offender welfare language of K.S.A. 2015 Supp. 22-3716(c)(9) is unconstitutionally vague because its language is extremely open-ended and encourages arbitrary application.

In his appellate brief, Wesley fails to expressly indicate whether he raises a facial or as-applied vagueness challenge. As noted above, the comments in his brief do not relate the statute to the specifics of his case but only attack the statute in general terms. Therefore, we will treat his brief as a facial challenge to K.S.A. 2015 Supp. 22-3716(c)(9). This is critical, because as-applied vagueness challenges are generally favored over broad facial attacks.

> "It is difficult for a challenger to succeed in persuading a court that a statute is facially unconstitutional. Such challenges are disfavored, because they may rest on

9

speculation, may be contrary to the fundamental principle of judicial restraint, and may threaten to undermine the democratic process. It is easier for a challenger to succeed in persuading a court that a statute is unconstitutional as applied to that particular challenger. [Citation omitted.]" *Bollinger*, 302 Kan. at 318-19.

Wesley claims K.S.A. 2015 Supp. 22-3716(c)(9) "does not give persons of common intelligence insight into what types of conduct might lead a court to find that probation would not serve an offender's welfare."

"A statute is unconstitutionally vague if it fails to give adequate warning of the proscribed conduct, that is to say, that it '"fails to provide a person of ordinary intelligence fair notice of what is prohibited.'" [Citations omitted.]" *Bollinger*, 302 Kan. at 318. Further, a statute is unconstitutionally vague where persons of common intelligence must guess at its terms' meaning and may differ as to their application. See *City of Lincoln Center v. Farmway Co-Op, Inc.*, 298 Kan. 540, 545, 316 P.3d 707 (2013). Conversely, a statute is not unconstitutionally vague if its words are commonly used or judicially defined, or have a settled meaning in law. *City of Wichita v. Hackett*, 275 Kan. 848, 853-54, 69 P.3d 621 (2003).

Contrary to Wesley's claim, a person of common intelligence is adequately notified of the proscribed conduct under the offender welfare language of K.S.A. 2015 Supp. 22-3716(c)(9). The statute's terms plainly state, employing commonly used words, that a district court may bypass the intermediate sanctions where imposition of such sanctions does not serve an offender's welfare. See K.S.A. 2015 Supp. 22-3716(c)(9). Although the statute does not expressly limit any particular type of conduct, a probationer's actions on probation are restricted by their probation conditions. Certainly, an individual probationer is aware of the specific facts bearing on their own probation conditions and is able to determine whether any given action is in their best interests. In fact, under K.S.A. 2015 Supp. 21-6607 the conditions of probation imposed by the court

10

are required to be given to a probationer in writing after sentencing. Wesley does not argue that any terms used in K.S.A. 2015 Supp. 22-3716(c)(9) are confusing or susceptible to ambiguous or differing meaning.

Thus, Wesley fails to demonstrate that the offender welfare language of K.S.A. 2015 Supp. 22-3716(c)(9) provides inadequate notification of the proscribed conduct. See *State v. Williams*, 299 Kan. 911, 920, 329 P.3d 400 (2014) (party challenging statute has the burden to overcome presumption of constitutionality). As such, his claim fails in this regard.

Wesley also contends the offender welfare language of K.S.A. 2015 Supp. 3716(c)(9) "begs for arbitrary and discriminatory enforcement." He asserts the statute's language is extraordinarily open-ended and permits district court judges to bypass the intermediate sanctions based on a dislike for a particular probationer or class of probationers.

A statute is also unconstitutionally vague if it fails to protect against arbitrary and discriminatory action by those tasked with enforcing it. *Bollinger*, 302 Kan. at 318; *City of Lincoln Center*, 298 Kan. at 545. In analyzing the second prong for vagueness, a court should be "mindful that '[t]he standards of certainty in [a statute] punishing criminal offenses are higher than in those depending primarily upon civil sanctions for enforcement.'" 298 Kan. at 545-46. Further, where criminal conduct is a prerequisite to application of a statute, as is the case for statutes governing probation, there is no risk of infringing on constitutionally protected conduct. See *State v. Webber*, 260 Kan. 263, 289, 918 P.2d 609 (1996).

K.S.A. 2015 Supp. 22-3716(c)(9) adequately guards against arbitrary and unreasonable enforcement of the offender welfare provision. First, a district court judge's decision-making authority is tempered by the mandate that he or she act within the limits

11

of sound judicial discretion. See *Carpenter*, 2015 WL 770208, at *5 (finding abuse of discretion standard still applies to disposition decisions under K.S.A. 2015 Supp. 22-3716[c][9]). A district court judge's ability to make arbitrary or unreasonable decisions is further restricted by the particularized finding requirement. A district court may not make an offender welfare finding unless it can make particularized findings to support its determination. See K.S.A. 2015 Supp. 22-3716(c)(9) (requiring offender welfare finding be "set[] forth with particularity"); *State v. McFeeters*, 52 Kan. App. 2d 45, 48, 362 P.3d 603 (2015) ("'[W]hen something is to be set forth with particularity, it must be distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details.'" [quoting *State v. Huskey*, 17 Kan. App. 2d 237, Syl. ¶ 2, 834 P.2d 1371 (1992)]). Lastly, as the State highlights, a district court judge is keenly aware of the particular facts bearing on an offender's success on probation and has ample experience rendering discretionary probation decisions. A district court judge, in turn, is well-equipped to determine whether the facts of a given case support an offender welfare finding.

In his reply brief, Wesley attempts to buttress his claims on this issue by arguing that the holding in the 2015 decision of the United States Supreme Court in *Johnson v. United States*, 576 U.S.___, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015), justifies a finding that K.S.A. 2015 Supp. 22-3716(c)(9) is unconstitutionally vague.

In *Johnson*, a federal criminal case, the petitioner pled guilty to felony possession of a firearm, and the Government sought to sentence him under the Armed Career Criminal Act (ACCA). 135 S. Ct. at 2556. The federal district court ultimately sentenced Johnson under one provision of the ACCA which imposed an increased prison term for a defendant with three prior convictions for a "violent felony," a term defined by statute to include any felony that involved "'conduct that presents a serious potential risk of physical injury to another'" (referred to as the "residual clause"). 135 S. Ct. at 2555-56, see 18 U.S.C. § 924(e)(2)(B)(ii) (2006).

The Supreme Court held that the ACCA's residual clause was unconstitutionally vague. 135 S. Ct. at 2557-60. In explaining its decision, the Court noted that for a district court to determine whether the residual clause covered a crime, the court had to picture the kind of conduct that the crime involved in "the ordinary case" and then judge whether that abstraction fell under the residual clause. 135 S. Ct. at 2557. The Supreme Court determined that process left grave uncertainty about how to estimate the risk posed by a crime, as well as requiring speculation about how much risk it takes for a crime to qualify as a violent felony. 135 S. Ct. at 2557-58. The Court concluded those uncertainties produced unpredictability and arbitrariness in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. 135 S. Ct. at 2558.

Although Wesley does not expressly say so, it appears the purpose of his reply brief, and citing *Johnson*, is to alert us that we should not find K.S.A. 2015 Supp. 22-3716(c)(9) constitutional "merely because there is some conduct that clearly falls within the provision's grasp." *Johnson*, 135 S. Ct. at 2561 (rejecting the Government and the dissent claim that there would be straightforward cases under the residual clause). However, here the State is not asserting K.S.A. 2015 Supp. 22-3716(c)(9) is constitutional because there are straightforward cases which fall under the provision. And, as we noted above, there are other compelling reasons to find that the statute meets constitutional muster.

Moreover, from a case comparison standpoint, K.S.A. 2015 Supp. 22-3716(c)(9) is substantially dissimilar to the ACCA's residual clause. Under our statute, in determining whether a probationer's welfare is not served by an intermediate sanction, a district court draws from the specific facts of the probationer's case, as opposed to the ordinary case process used with the residual clause. As we have observed, a probationer is keenly aware about his or her own case and, having been provided with a written probation order, is on notice as to the conditions of probation to which he or she is being held accountable. For that reason, we believe K.S.A. 2015 Supp. 22-3716(c)(9) gives fair

13

warning of the proscribed conduct and adequately guards against arbitrary and unreasonable enforcement. Hence, it is plainly constitutional.

To sum up, we find *Johnson* to be completely distinguishable and do not think it has any material effect on Wesley's claims or his case. The conclusion in *Johnson*, that a statute may be unconstitutionally vague even if there are straightforward cases which fall within it, simply is not relevant to determination of Wesley's claims.

Our final conclusion is that Wesley has not demonstrated the offender welfare language of K.S.A. 2015 Supp. 22-3716(c)(9) either fails to give adequate warning of the proscribed conduct or fails to guard against arbitrary or unreasonable enforcement. Accordingly, K.S.A. 2015 Supp. 22-3716(c)(9) is not unconstitutionally vague.

Affirmed.