NOT DESIGNATED FOR PUBLICATION

No. 114,590

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN A. ROGERS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed December 2, 2016. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Officer, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before MCANANY, P.J., PIERRON, J., and BURGESS, S.J.

*Per Curiam*:  John A. Rogers appeals from the district court's revocation of his probation under K.S.A. 2015 Supp. 22-3716(c)(9). Rogers' probation was revoked after his fourth time violating the conditions of his probation. Rogers argues for the first time on appeal that K.S.A. 2015 Supp. 22-3716(c)(9) is unconstitutionally vague because it fails to give adequate notice of the conduct it proscribes and fails to properly protect against arbitrary and discriminatory enforcement. Rogers also argues that the district court abused its discretion in revoking his probation for three reasons: (1) It only used K.S.A. 2015 Supp. 22-3716(c)(9) because it did not properly follow the intermediate

1

sanction scheme in K.S.A. 2015 Supp. 22-3716(c)(1); (2) it failed to set out with particularity the reasons that Rogers' welfare would not be served by further intermediate sanctions; and (3) no reasonable person would agree with the district court's decision to impose Rogers' sentence after a technical violation. After consideration, Rogers' arguments are not persuasive. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On September 5, 2013, Rogers entered into a plea agreement in Sedgwick County. Rogers pled guilty to one count of burglary in Sedgwick County case No. 13 CR 1035. Rogers also pled guilty to two additional counts of burglary and two counts of felony theft in Sedgwick County case No. 13 CR 1283. In exchange, the State agreed not to file charges against Rogers in three additional cases. Further, the parties agreed that the presumptive sentence of probation should be imposed.

The sentencing hearing was held on October 30, 2013, and both the State and Rogers requested that the district court adopt the terms and conditions of the plea agreement. The district court obliged and sentenced Rogers to 24 months' probation with an underlying prison sentence of 26 months. At the hearing, the district court communicated to Rogers the conditions that he was to obey while on probation.

On December 17, 2013, a bench warrant was issued allegeding Rogers violated the terms and conditions of his probation by committing the crime of larceny (theft) in Sedgwick County. A probation revocation hearing was held on April 21, 2014. Rogers did not contest the allegations in the warrant. The district court revoked, reinstated, and extended Rogers' probation 24 months from the date of the hearing. The district court also ordered Rogers to begin outpatient treatment within 30 days and successfully complete the program. In addition the district court ordered Rogers to sign releases for

2

his intensive supervision officer (ISO) to monitor his treatment progress, set a minimum payment for his restitution, and to submit to a urinalysis (UA).

On July 1, 2014, a second bench warrant alleging violations of his probation was issued for Rogers. The warrant alleged Rogers failed to make his minimum restitution payments; Rogers signed a statement admitting to using marijuana and Lortab prescription pills; Rogers had a drug test that returned positive results for cannabinoids, opiates, and methadone; Rogers failed to begin his outpatient treatment within the 30-day period as ordered; and alleged that Rogers failed to complete his community service.

On July 18, 2014, a second probation revocation hearing was held. As a result of this new violation, the district court revoked and reinstated Rogers' probation and ordered Rogers to serve a 3-day quick-dip sanction in county jail; to successfully complete the Residential Community Corrections Program; and that Rogers submit to at least two UA tests per month for 1 year. At the revocation hearing, the district judge made it clear to Rogers that he was running out of chances to obey the conditions of his probation:

> "Against my better judgment, I'm going to authorize work release after the three days are complete while [you] await[] a bed in Residential.
> "I do that solely for you to attempt to establish employment and not fall further behind in your commitments.
> "I don't know what [your attorney] has explained to you about the current laws that we're subject to on probation violations, but I'm gonna put it in a nutshell [for] you.
> "You have used up my patience, Mr. Rogers. This is a second probation violation. A third probation violation will be much more unpleasant than today's, and you should expect at a minimum to go to prison at the next probation violation. And I don't think I can be much clearer than that.
> . . . .
> "You can consider this a zero tolerance probation or whatever you'd like, but technical violation or whatever it is next time, you better expect to be serving some time in a state prison rather than our jail if you come back.

"You're fortunate that the Residential program is an option for you, and you're also fortunate that I'm going to let you out almost a month before you go into that program on work release.

"This is all the generosity that you'll be receiving from me."

In response, Rogers stated, "Your Honor . . . I appreciate your patience with me. I understand what you're saying. My favors are done. I will not be back in front of you. I thank you for having mercy on at the very least my family today."

On September 5, 2014, a third bench warrant alleging violations of probation was issued for Rogers. The warrant alleged that Rogers had failed a UA test when he tested positive for methadone. On October 8, 2014, a third probation revocation hearing was held. Despite the warnings from the district court at the previous revocation hearing, the district court revoked, reinstated, and modified Rogers' probation by ordering him to re-enter and complete the Residential Community Corrections Program. At the hearing, both the State and Rogers requested a 120-day soak. Instead of the soak, the district court ordered Rogers to reenter and successfully complete the Residential Community Corrections Program. At the revocation hearing, the district judge stated the following:

"[W]hile it was certainly the Court's intent based up on [Rogers'] history that an intermediate sanction was part of the way we were going, to DOC, I think I'm going to reconsider that and I think that we may try Residential one final time.

"I think that the structure of Residential is likely more beneficial to the defendant than a strict DOC sanction which would be of lesser length, likely a maximum of 90 days if DOC continues releasing at the halfway point of any intermediate sanction which I believe they're doing."

Once again, the district judge informed Rogers of just how thin the ice beneath his feet was becoming:

4

"THE COURT: Here's the deal, Mr. Rogers. We're done. This is it. You have very little credibility with me.

. . . .

"THE COURT: I have made notes of your comments each time. Your comments today are similar to previous comments you've made. I don't know if you're sincere, I don't care if you're sincere at this point. At this point we are out of options. I'm going to flat out tell you I'm ordering Residential.

"[ISO], I'm ordering that [Rogers] comply with everything that was previously ordered at the last time when I gave him Residential. [Rogers] better be making his payments, he better be doing community service, he better be doing his UA's and everything else. If there is one violation, you are to notify me immediately.

"Mr. Rogers, I'm telling you now, I think I have been pretty clear in the past, I'm going to be very clear now. If you come back on a fourth [probation violation] after we have undertaken the measures that we have, I am going to be of the belief that it will not be in your best interest or welfare to at that time complete an intermediate sanction.

"What that means is we are not going to stop at an intermediate sanction. It is highly likely I will make findings that will sentence you to prison for the rest of the sentence in this case."

On June 2, 2015, a fourth bench warrant alleging violations of probation was issued for Rogers. The warrant alleged that Rogers had violated the conditions of his probation when he tested positive for cannabinoids twice and admitted to using marijuana. On July 9, 2015, a fourth probation revocation hearing was held and Rogers admitted to the alleged violations. The State requested the district court to make findings under K.S.A. 2015 Supp. 22-3716(c)(9) that continuing probation would not be in Rogers' or the community's best interest. Rogers requested an intermediate soak. At the hearing, the district judge noted that he did not order a quick dip sanction after the first probation violation because he forgot to do so. The district judge also acknowledged that he probably should have ordered an intermediate sanction after Rogers' third probation violation, but instead opted for placement in Residential Community Corrections Program. The district judge informed Rogers:

5

"By all rights, you should have gone to prison well before this hearing or certainly faced prison sooner, had I remembered to do a quick dip at the first [probation violation] or actually put you into a DOC sanction at your next [probation violation]. So those certainly constitute additional breaks you have received."

Using K.S.A. 2015 Supp. 22-3716(c)(9), the district court revoked Rogers' probation and ordered him to serve his underlying criminal sentence. In support of his use of K.S.A. 2015 Supp. 22-3716(c)(9), the district court made the following findings:

1. Rogers "demonstrated a continuous use of marijuana and other illegal drugs while on probation;"
2. Rogers repeatedly failed to change his behavior to comply with the terms and conditions of his probation;
3. Rogers had been given many opportunities by the district court and Community Corrections, including treatment and multiple Residential placements;
4. An intermediate sanction would have no effect on or be of any benefit to Rogers in light of his prior probation violations and history, including the Residential placements that had already been attempted; and
5. Expending further scarce probation resources on Rogers was not warranted and would be a waste of those resources where the district court had made many attempts at avoiding imposing a prison sanction or sentence.

The district court stated that it was specifically making these findings to support that Rogers' welfare would not be served by an intermediate sanction.

In total, Rogers violated his probation four times in a 20-month period after his original sentencing. On July 9, 2015, the district court revoked Rogers' probation and imposed his underlying sentence of 26 months. Rogers timely appeals.

6

Is K.S.A. 2015 Supp. 22-3716(c)(9) Unconstitutionally Vague?

Rogers argues that K.S.A. 2015 Supp. 22-3716(c)(4) and (9) are unconstitutionally vague and therefore void. Rogers admits in his brief that he is raising this issue for the first time on appeal.

Generally, issues that are not raised before the district court cannot be raised for the first time on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). More specifically, alleged constitutional violations raised for the first time on appeal are usually not considered by this court. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). There are, however, several exceptions to the rule. These exceptions include:

> "'(1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision.' [Citation omitted.]" *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 1178 (2009).

Rogers argues that his claim should be heard for the first time on appeal because it "presents a purely legal question arising on proved or admitted facts that would be finally determinative of Mr. Rogers' case." The State acknowledges in its brief that Rogers is invoking the first exception from *Broderick* listed above. The State does not contest Rogers' claim fits within that exception. This is likely because Rogers never contested the facts leading to the revocation of his probation. As such, Rogers' claim may be properly heard for the first time on appeal because it involves a question of law arising from proved or admitted facts and is finally determinative of his case. See *Broderick*, 286 Kan. at 1082.

7

Appellate courts exercise unlimited review when determining the constitutionality of a statute. *State v. Petersen-Beard*, 304 Kan. 192, 194, 377 P.3d 1127 (2016). The courts presume the statute being reviewed is constitutional and resolve any doubt as to its constitutionality in favor of the statute's validity. 304 Kan. at 194. In the present case, these rules should be weighed against the general rule that criminal statutes are to be construed in favor of the accused. See *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016).

Here, Rogers challenges the constitutionality of K.S.A. 2015 Supp. 22-3716(c)(4) and (c)(9), by arguing that the statute is void for vagueness. But, Rogers fails to explain why he is challenging K.S.A. 2015 Supp. 22-3716(c)(4). The district court expressly stated it was using K.S.A. 2015 Supp. 22-3716(c)(9) to revoke Rogers' probation at the revocation hearing. Presumably, Rogers challenges both sections of the statute because they use similar language. The provisions are as follows:

> "(4) The court may require an offender for whom a violation of conditions of release or assignment or a nonprison sanction has been established as provided in this section to serve any time for the sentence imposed or which might originally have been imposed in a state facility in the custody of the secretary of corrections without a prior assignment to a community correctional services program *if the court finds and sets forth with particularity the reasons for finding that* the safety of the members of the public will be jeopardized or that *the welfare of the inmate will not be served by such assignment to a community correctional services program*.
>     . . . .
> "(9) The court may revoke the probation, assignment to a community correctional services program, suspension of sentence or nonprison sanction of an offender pursuant to subsection (c)(1)(E) without having previously imposed a sanction pursuant to subsection (c)(1)(B), (c)(1)(C) or (c)(1)(D) *if the court finds and sets forth with particularity the reasons for finding that* the safety of members of the public will be jeopardized or that the *welfare of the offender will not be served by such sanction*." (Emphasis added.) K.S.A. 2015 Supp. 22-3716(c)(4), (9).

Even though the sections use similar language, this panel declines to review K.S.A. 2015 Supp. 22-3716(c)(4) because the district court did not use it to impose Rogers' sentence. Therefore, the determination of whether K.S.A. 2015 Supp. 22-3716(c)(4) is vague would have no bearing on Rogers' current appeal. It does not fit in the exception Rogers advances for hearing this argument for the first time on appeal because it would not be determinative of his case. For this reason, we review K.S.A. 2015 Supp. 22-3716(c)(9) only, as it was the section of the statute that the district court relied on in revoking Rogers' probation.

In assessing a penal statute for vagueness the court is faced with a due process issue. *State v. Cordray*, 277 Kan. 43, 51, 82 P.3d 503 (2004).

"A statute that either requires or forbids the doing of an act in language that is so vague that persons of common intelligence must guess at its meaning and will differ as to its application violates the Fourteenth Amendment to the United States Constitution and is thus void for vagueness. [Citation omitted]." *Dissmeyer v. State*, 292 Kan. 37, 39, 249 P.3d 444 (2011).

The court will utilize a two-part test in determining whether a statute is unconstitutionally vague. *State v. Rupnick*, 280 Kan. 720, 737, 125 P.3d 541 (2005). First, the court must consider whether the statute provides persons of common intelligence with definite and adequate notice of the conduct it proscribes. *Rupnick*, 280 Kan. at 737. Then, the court must consider whether the statute provides adequate guidelines to prevent arbitrary or discriminatory enforcement. *Rupnick*, 280 Kan. at 737. A law will be found unconstitutionally vague if it violates either prong of the test. *City of Lincoln Center v. Farmway Co-Op, Inc.*, 298 Kan. 540, 545, 316 P.3d 707 (2013) (citing *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S. Ct. 1849, 144 L. Ed. 2d 67 [1999]). Rogers argues that K.S.A. 2015 Supp. 22-3716(c)(9) is vague because it fails both parts of the test as set out in *Rupnick*.

9

Rogers argues that K.S.A. 2015 Supp. 22-3716(c)(9) is unconstitutionally vague "because it fails to provide reasonable notice to defendants as to what conduct is prohibited." More specifically, Rogers "challenges the portions of the statute that permit the district court to impose a probationer's underlying sentence if it finds that 'the welfare of the offender will not be served' by imposing a lesser sanction or continuing the offender's probation." Rogers asserts that the statute fails to provide "sufficient notice to persons of common intelligence about what types of conduct could lead the court to conclude that probation would not serve the offender's welfare. . . . Because reasonable people could at least differ about what behaviors demonstrate that an offender's welfare would not be served by continued probation." Rogers' arguments are misguided.

As the State correctly points out, our Supreme Court addressed a similar challenge in *State v. Rasler*, 216 Kan. 292, 296, 532 P.2d 1077 (1975). There, our Supreme Court expressly held that K.S.A. 22-3716 meets all constitutional requirements for revocation proceedings. 216 Kan. at 296. In *Rasler*, the defendant argued that K.S.A 22-3716 was unconstitutional because it failed to establish definite grounds upon which probation may be revoked or denied. This is similar to Rogers arguing that the statute fails to adequately describe the conduct it prohibits. Our Supreme Court noted:  "The statute clearly specifies that a violation of any of the conditions of probation is grounds for revocation." 216 Kan. at 293.

Rogers fails in arguing that a statute relating to the consequences of violating conditions of probation fails to adequately warn offenders of the conduct it proscribes. The only reason the statute was applied to Rogers was because he admitted to a violation of the conditions of his probation. Surely any individual of common intelligence would understand that K.S.A. 2015 Supp. 22-3716(c)(9) proscribes violating the conditions of

one's probation. Rogers, like *Rasler*, cannot escape a statute relating to violations of probation by arguing he did not know what conduct the statute proscribed. 216 Kan. at 293. Such an argument defies logic.

Moreover, one of the fundamental rules of statutory construction is that the intent of the legislature governs if that intent can be determined. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). An appellate court will first attempt to determine legislative intent by examining the plain language of the statute in question. *Barlow*, 303 Kan. at 813. When construing statutes to determine legislative intent, appellate courts will work to construe the act as a whole to reconcile the various provisions. *State v. Keel*, 302 Kan. 560, Syl. ¶ 7, 357 P.3d 251, *cert. denied* 136 S. Ct. 865 (2015).

Here, the language of K.S.A. 2015 Supp. 22-3716 as a whole makes it clear that at the very least it proscribes conduct that results in a violation of the conditions of probation. The very title of the statute reads: "Arrest for violating condition of probation . . . ." K.S.A. 2015 Supp. 22-3716. Additionally, subsection (c) begins by laying out the sanctions available to the court should a violation of the conditions of probation occur. See K.S.A. 2015 Supp. 22-3716(c)(1).

Thus, Rogers' arguments that K.S.A. 2015 Supp. 22-3716(c)(9) fails to provide notice as to what conduct is prohibited are misplaced. It would have been nearly impossible for the legislature to list every prohibited act that could lead to the revocation of probation and the imposition of an underlying prison sentence under K.S.A. 2015 Supp. 22-3716(c)(9). Instead, the legislature chose to provide the courts with an alternative procedure for revoking probation and imposing an underlying prison sentence when the court finds that the offender's welfare would not be served by further intermediate sanctions. K.S.A. 2015 Supp. 22-3716(c)(9). Here, at the very least, Rogers and any other individual of common intelligence, would know that violating the conditions of probation may result in the court using K.S.A. 2015 Supp. 22-3716(c)(9) to

impose the underlying prison sentence after finding that further intermediate sanctions would not be beneficial.

Finally, Rogers argues that "it is difficult to imagine a scenario where probation would not better serve an offender's welfare than prison." Rogers further argues that he would have been better served by continuing probation because he would not have access to drug rehabilitation programs in prison. Such an argument cannot be supported by a plain reading of the challenged statute. This court will presume that the legislature does not intend to enact meaningless legislation. *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014). If Rogers' argument was true, then K.S.A. 2015 Supp. 22-3716(c)(9) would be meaningless. The district court would never be able to utilize this provision in sentencing a probation violator to prison in that the court is required to specifically find that "the welfare of the offender will not be served by such sanction." Clearly, the legislature contemplated that there may be times when an offender's welfare would be better served in prison than on probation. Rogers' argument fails.

For these reasons, Rogers' argument that K.S.A. 2015 Supp. 22-3716(c)(9) is constitutionally defective because it fails to provide offenders with adequate notice of the conduct that may result in the imposition of an underlying prison sentence fails. Rogers argues that "reasonable people could at least differ about what behaviors demonstrate that an offender's welfare would not be served by continued probation." However, it is obvious that violating the conditions of one's probation could potentially result in the district court finding that an offender's welfare would not be served by continued probation. Furthermore, Rogers certainly knew in that he was warned multiple times at previous revocation hearings. K.S.A. 2015 Supp. 22-3716(c)(9) is not unconstitutionally vague because individuals of common intelligence would know that violating the conditions of their probation might lead the district court to determine under K.S.A. 2015 Supp. 22-3716(c)(9) that their welfare would not be served by an intermediate sanction.

12

Rogers argues that "nothing in [K.S.A. 2015 Supp. 22-3716(c)(9)] prevent[s its] discriminatory or arbitrary enforcement under the second void-for-vagueness consideration. [Citation omitted.]" Rogers specifically argues that the statute is subject to arbitrary enforcement because "no clear rules explain how and when the court should determine that an offender's welfare won't be served by continued probation."

"'"[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters . . . on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application."' [Citations omitted]." *Farmway*, 298 Kan. at 546. Our Supreme Court has noted that words in a statute that are subject to a wide variety of interpretations cause issues in the absence of objective standards by which to apply them. *State v. Bryan*, 259 Kan. 143, 149, 910 P.2d 212 (1996).

Our Supreme Court has noted that the second prong of the vagueness test deserves more careful consideration. Also, our Supreme Court has made clear that criminal statutes must be more carefully examined than civil statutes in the context of vagueness. To avoid being vague the statute must establish minimal guidelines for enforcement. *Farmway*, 298 Kan. at 545-46.

As noted in our prior discussion, Rogers has taken issue with the section of the statute that allows the district court to revoke probation if it sets out its findings with particularity that the offender's welfare will not be served by further intermediate sanctions, K.S.A. 2015 Supp. 22-3716(c)(9).

13

Rogers argues that "while not every statute that permits the exercise of judicial discretion is unconstitutionally vague, a statute that lacks clear guidelines for the exercise of that discretion is unconstitutionally vague, because nothing ensures it will consistently be applied the same way in the same situation." As Rogers admits in his brief, some discretion is inherent in sentencing proceedings. See *State v. Webber*, 260 Kan. 263, 289, 918 P.2d 609 (1996), *cert. denied* 519 U.S. 1090 (1997).

The State argues that the "[i]mposition of [Rogers'] underlying sentence was not the product of an arbitrary and discriminatory ruling by the court. Rather, the ruling was driven by the particular facts and circumstances of [Rogers'] case, of which the judge had become keenly aware throughout the evolution of the matter." The State mainly relies on *State v. Ahart*, No. 108,086, 2013 WL 5303521 (Kan. App. 2013) (unpublished opinion), in making its argument.

*Ahart* involved an individual that was convicted of "felony mistreatment of a dependent adult after serving as caretaker for an elderly man and allegedly taking unfair advantage of his financial resources." 2013 WL 5303521, at *1. The offender there argued that the statute under which she was convicted was unconstitutionally vague because an undefined term "'undue influence'" in the statute opened it up to the risk of arbitrary and discriminatory enforcement. 2013 WL 5303521, at *1. The court noted that undue influence was not easily defined because it often depended on unique factual circumstance of individual cases. 2013 WL 5303521, at *4. The court went on to hold that "a statute is not susceptible to arbitrary or discriminatory enforcement merely because the trier of fact—a person or persons of common intelligence—must use their common knowledge and experience to apply the terms . . . in their ordinary sense to a defendant's conduct. [Citation omitted.]" 2013 WL 5303521, at *4.

Similarly, K.S.A. 2015 Supp. 22-3716(c)(9) is not susceptible to arbitrary and discrimination just because the district court must use its common knowledge to

14

determine when the imposition of a prison sentence will be in the better interest of an offender's welfare than continued probation or intermediate sanctions. This is especially true in Rogers' case because the district judge was very familiar with his situation as he was the judge at each of Rogers' four revocation hearings. It may even be said that the judge was in a position superior to an individual of common intelligence. Again, some judicial discretion is inherit in the context of sentencing. *Webber*, 260 Kan. at 289.

K.S.A. 2015 Supp. 22-3716(c)(9) requires the court revoking probation and imposing an offender's underlying prison sentence "to fin[d] and se[t] forth *with particularity* the reasons for finding . . . that the welfare of the offender will not be served by" further intermediate sanctions. (Emphasis added.) This requirement is in itself a safeguard against arbitrary and discriminatory enforcement.

Our court has held that "K.S.A. 2014 Supp. 22-3716(c)(9)'s mandate of particularity requires district courts to make findings specific to individual defendants that do more than recite the defendant's violations—courts must offer some explanation for why public or personal welfare would not be served by continued probation." *State v. Jackson*, No. 113,654, 2016 WL 2609638, at *6 (Kan. App. 2016) (unpublished opinion). This court has also held: "When something is to be set forth with particularity, it must be distinct rather than general, with exactitude of detail, especially in description or stated with attention to or concern with details." *State v. Miller*, 32 Kan. App. 2d 1099, Syl. ¶ 3, 95 P.3d 127 (2004). Thus, the court must make and be able to articulate detailed findings to support its determination that the offender's welfare will not be served by further intermediate sanctions.

K.S.A. 2015 Supp. 22-3716(c)(9) allows the district court to make a finding that an offender's welfare would not be served by the imposition of further intermediate sanctions. But the district court must support that finding with detailed, objective facts. For this reason, the particularity requirement adds an additional layer of protection

15

against arbitrary and discriminatory enforcement. The protection is especially strong in light of our court's holding regarding the particularity requirement. *Miller*, 32 Kan. App. 2d 1099; *Jackson*, 2016 WL 2609638, at *6.

Rogers' argument that K.S.A. 2015 Supp. 22-3716(c)(9) is vulnerable to arbitrary and discriminatory enforcement fails. The statute will not fail just because it requires the district court to employ common knowledge in making its determination of whether an offender's welfare will be best served by continued probation or the imposition of an underlying prison sentence. See *Ahart*, 2013 WL 5303521, at *4. Further, K.S.A. 2015 Supp. 22-3716(c)(9) requires the district court to support its finding with particularity. In placing this requirement on the court, the statute protects against arbitrary and discriminatory enforcement because it forces the district court to point to objective facts that support its determination. K.S.A. 2015 Supp. 22-3716(c)(9) is not vulnerable to arbitrary and discriminatory enforcement. It is not void under the second prong of the vagueness test.

### DID THE TRIAL COURT ABUSE ITS DISCRETION IN REVOKING ROGER'S PROBATION AND ORDERING HIM TO SERVE HIS UNDERLYING SENTENCE?

The issue of whether a court has properly revoked an offender's probation is subject to abuse of discretion review. *State v. Hurley*, 303 Kan. 575, 580, 363 P.3d 1095 (2016). A judicial action will be found to be an abuse of discretion if no reasonable person would take the view adopted by the trial court. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). A judicial action also constitutes an abuse of discretion if it is based on an error of law or an error of fact. 303 Kan. at 445. But once evidence of a violation of a condition of probation is shown, revocation is within the sound discretion of the district court. *State v. Graham*, 272 Kan. 2, 4, 30 P.3d 310 (2001).

16

Here, Rogers argues that the district court abused its discretion by revoking his probation and ordering him to serve his underlying sentence. More specifically, Rogers argues that

"the court legally erred by applying the welfare-exception because it was done merely to circumvent the court's error in failing to impose the requisite sanctions before this hearing, because the court did not explain how prison, as opposed to probation, would benefit . . . Rogers' welfare, and that no reasonable person would agree with the district court that his welfare would be better served in prison than on probation."

WHETHER THE TRIAL COURT ERRED IN RELYING ON
K.S.A. 2015 SUPP. 22-3716(c)(9) TO REVOKE ROGERS' PROBATION

Generally, K.S.A. 2015 Supp. 22-3716(c)(1) requires a court to impose a graduated set of sanctions before imposing an underlying sentence. In Rogers' case, the district court admitted that it had not followed the statutory scheme as it should have at the first revocation hearing. At the final revocation hearing, the district judge stated:

"I did not order the quick dip sanction [at the first revocation hearing] as I should have simply because I forgot to do it. And under [K.S.A. 2015 Supp. 22-3716(c)], that actually carries consequences for all of us in the hoops we've got to jump through.

"The second probation violation hearing occurred July 18th, 2014. There were multiple violations, including the admission of marijuana, the opiates and the methadone. I believe those were either positive UA's or admissions.

". . . At that time of the hearing, [Rogers] had not entered the outpatient that had been ordered at the April 21st hearing. At that time I ordered a quick dip jail sanction and placement in Residential.

"We then came back on the third probation violation hearing on October 8th, 2014. [Rogers] was dirty for methadone. At that time I placed him back in Residential. I did not order an intermediate DOC sanction as I probably should have."

17

Thus, Rogers contends that the district court erred at two of the first three revocation hearings in failing to order intermediate sanctions. Rogers argues that his case should be remanded and his probation should be reinstated or an intermediate sanction should be imposed in place of serving his sentence.

As the State correctly points out in the record, the supposed mistake at the third revocation hearing was one that Rogers agreed was for his best benefit. At that revocation hearing the district judge stated:

> "Well . . . while it was certainly the Court's intent based upon the defendant's history that an intermediate sanction was part of the way we were going . . . I think I'm going to reconsider that and I think that we may try Residential one final time.
> "I think that the structure of Residential is likely more beneficial to [Rogers] than a strict DOC sanction which would be of lesser length."

From the record then, it is clear that the district court did not err in failing to impose an intermediate sanction at the third revocation hearing. Instead, the district court took deliberate action that it considered to be in Rogers' best interest. It was not until the fourth and final revocation hearing that the district court found under K.S.A. 2015 Supp. 22-3716(c)(9) that Rogers' welfare was not best served by further intermediate sanctions. The district court did not use K.S.A. 2015 Supp. 22-3716(c)(9) only to circumvent the fact that it had not handed out intermediate sanctions. Actually, the district court used it because Rogers' conduct had left it with few other options.

Whether the actions taken by the district court at Rogers' previous probation violations can be considered intermediate sanctions in fact, they were certainly intermediate sanctions in effect. If the intention of the intermediate sanctions statutes is to give a probation violator the chance to avoid prison and be successful on probation, then the district court's previous sentencing orders had that effect. Those previous orders were to Rogers' benefit. He simply did not take advantage of the opportunities he was offered.

18

## WHETHER THE TRIAL COURT STATED WITH PARTICULARITY WHY ROGERS' WELFARE WOULD NOT BE SERVED BY FURTHER INTERMEDIATE SANCTIONS

Rogers argues that "to permit district courts to invoke [K.S.A. 2015 Supp. 22-3716(c)(9)] because of technical violations . . . and no other evidence that the offender's welfare would be better served by prison completely defeats the purpose of the intermediate-sanctions scheme." Rogers asserts that the intermediate-sanctions scheme is in place because offenders will likely violate their probation two to three times before actually complying.

But this court has held that "the guarantee of an intermediate sanction for a first probation violation is not absolute: A district court may order a felon to serve the underlying sentence for his crime if it relies with specific findings on one of the reasons provided by statute." *State v. Harding*, No. 110,677, 2014 WL 3630554, at *3 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. 1015 (2015).

Rogers admits that the district court made detailed findings of how he had violated the conditions of his probation, but he contests that the court made particular findings about how serving his prison sentence would be of greater benefit to him.

As previously detailed, our court has held that "K.S.A. 2014 Supp. 22-3716(c)(9)'s mandate of particularity requires district courts to make findings specific to individual defendants that do more than recite the defendant's violations—courts must offer some explanation for why public or personal welfare would not be served by continued probation." *Jackson*, 2016 WL 2609638, at *6.

In *Jackson*, this court held that the district court failed to meet the particularity requirement when it focused on the offender's past transgressions and not on how the revocation would benefit the offender's future welfare. 2016 WL 2609638, at *6. This

court remanded the case to the district court to either impose an intermediate sanction or better describe its findings with particularity. 2016 WL 2609638, at *6. In *Miller*, this court held that generalized comments about a defendant's chronic drug use at a revocation hearing will not suffice for the requirement that the district court make findings with particularity. 32 Kan. App. 2d at 1103.

At Rogers' final probation revocation hearing, the district court made the following particular findings in support of its determination under K.S.A. 2015 Supp. 22-3716(c)(9) that Rogers' welfare would not have been served by an intermediate sanction:

1. Rogers "demonstrated a continuous use of marijuana and other illegal drugs while on probation;"
2. Rogers repeatedly failed to change his behavior to comply with the terms and conditions of his probation;
3. Rogers had been given many opportunities by the district court and Community Corrections, including treatment and multiple Residential placements;
4. An intermediate sanction would have no effect on or be of any benefit to Rogers in light of his prior probation violations and history, including the Residential placements that had already been attempted; and
5. Expending further scarce probation resources on Rogers was not warranted and would be a waste of those resources where the district court had made many attempts at avoiding imposing a prison sanction or sentence.

Here, the district court's findings differ from those in *Jackson* and *Miller* in that they are more particular and forward looking. The district court here recognizes that an intermediate sanction would likely have no effect on or be of any benefit to Rogers in light of his prior violations. This distinguished Rogers from *Jackson* because here the district court, while relying partly on Rogers' past, was also looking to what would

benefit him in the future. Further, the district court focused on the number of opportunities afforded to Rogers that he failed to take advantage of. Unlike *Miller*, the district court did not only rely on the fact that Rogers' violations were for drug use. Instead, the district court focused on the fact that the opportunities given to Rogers to overcome his drug habit would no longer be warranted in light of his failure to take advantage of them.

Thus, the district court did not fail to set out with particularity as required by K.S.A. 2015 Supp. 22-3716(c)(9) the reasons for its determination that Rogers' welfare would not be served by an intermediate sanction.

WHETHER NO REASONABLE PERSON WOULD AGREE WITH THE TRIAL COURT'S DECISION TO IMPOSE ROGERS' SENTENCE FOR A TECHNICAL VIOLATION

Rogers argues the district court abused its discretion because he presented substantial information that suggested the court should continue his probation. Rogers argues that, "[b]ecause no reasonable person would agree that Mr. Rogers should serve 26 months in prison instead of going to inpatient drug treatment or spending 6 months in jail before being reinstated on probation, the district court abused its discretion by revoking his probation and imposing his underlying prison sentence."

Rogers initially pled guilty to a total of three counts of burglary and two counts of felony theft. In exchange for his plea, the State agreed not to file charges in an additional three cases against Rogers. Rogers' first probation violation came approximately 2 months after his sentencing when he was accused of committing the new crime of larceny (theft). Rogers' second probation violation came after he was accused of failing to make restitution payments as ordered and admitting to smoking marijuana and using Lortab prescription pills. Rogers also failed a drug test in testing positive for cannabinoids, opiates, and methadone. Rogers' third probation violation came when he again tested

21

positive for methadone. Rogers' fourth and final probation violation came when Rogers tested positive for cannabinoids twice. All in all, Rogers committed four probation violations in a span of 20 months.

Now Rogers argues that no reasonable person would agree with the district court that Rogers should serve out his underlying sentence after his fourth probation violation. Rogers argues that he was making great progress on his road to recovery while he was on probation. Rogers further argues that he only turned to marijuana because he was experiencing extreme stress at home. The fact that Rogers turned to marijuana to deal with his stress actually shows that he has not come as far in defeating his addiction as he would like the court to believe.

Returning to *Harding*, we noted that the guarantee of an intermediate sanction is not absolute, even for a first time offender. 2014 WL 3630554, at *3. In *Harding*, the offender's probation was revoked at his first probation revocation hearing for failed drug tests and his failure to attend various court-ordered meetings. Here, Rogers was not ordered to serve out his underlying sentence at his first revocation hearing, or his second revocation hearing, or even his third. Rogers was given chance after chance until he became a four-time probation violator. Rogers had one violation for committing a new crime and three technical violations related to illegal drug use. Rogers did not contest any of the allegations made against him in relation to his violations of his conditions of probation. If it is reasonable for a district court to revoke an offender's probation at the offender's first revocation hearing for similar violations, the revocation of Rogers' probation after four probation violations is also reasonable. See 2014 WL 3630554.

Rogers' assertion that no reasonable person would agree with the district court's decision to impose his sentence for a technical violation is unpersuasive. Rogers' sentence was not imposed for one technical violation. Rogers' sentence was imposed because he violated his probation four times in a period of 20 months. This showed a lack of

commitment to his recovery and a lack of respect for the many opportunities the district court granted him. As the State points out, probation is an act of grace by the sentencing judge and, unless it is required by law, it is a privilege rather than a matter of right. *State v. Gary*, 282 Kan. 232, 237, 144 P.3d 634 (2006). Here, Rogers exhausted the district court's grace, and the court reasonably imposed his underlying sentence.

In conclusion, Rogers' argument that the district court abused its discretion in revoking his probation fails. The district court did not abuse its discretion in relying on K.S.A. 2015 Supp. 22-3716(c)(9) instead of intermediate sanctions because the court provided Rogers with many opportunities that he failed to take advantage of. Further, the district court did not abuse its discretion in relying on K.S.A. 2015 Supp. 22-3716(c)(9) because it made the requisite findings with particularity to support its determination that Rogers' welfare would not benefit from further intermediate sanctions. Finally, the district court did not abuse its discretion in revoking Rogers' probation after his fourth violation of the conditions of his probation.

Affirmed.